# EXHIBIT A

*John F. Pillar, Jr.*

Attorney at Law

223 High Street - 2nd Floor

Mount Holly, New Jersey 08060

April 30, 2009

Richard M. Braslow, Esq.
516 Fielders Lane
Toms River, NJ 08755



RECEIVED
MAY - 5, 2009

Re:    David J. MacFarland
and Bordentown Twp. Fire District No. 2
3 Month Suspension Without Pay
Our File No. 01-0707

Dear Mr. Braslow:

As you were advised in previous correspondences dated February 13, 2009 and March 5, 2009, I represent David J. MacFarland who has been suspended without pay for three months effective January 29, 2009 on the allegation that a psychological evaluation conducted by Robert L. Tannenbaum, Ph.D. has deemed him unfit for duty as a firefighter. When last we spoke, you indicated to me that Bordentown Township Fire District No. 2 (hereinafter "Fire District") had not authorized your involvement in this matter.

Enclosed herewith please find copies of the following:

1.    Verified complaint and jury demand with exhibits annexed thereto;

2.    Memorandum of law submitted in support of request for entry of show cause order with restraints;

3.    Plaintiff's certification submitted in support of request for entry of same order;

4.    My certification submitted in support of request to appoint process server; and

5.    Proposed form of order.

I am, on this same date, filing this material with the Court. Once I receive communication as to the

Telephone (609) 267-7711
Telefax (609) 267-9303

Licensed to Practice in:

New Jersey
Texas

Richard M. Braslow, Esq.
Re: MacFarland v. Bordentown Twp. Fire District No. 2
April 30, 2009
Page 2

assignment of this matter and the initial date for presentation, I will advise you accordingly.

I am, by copy of this letter, serving the enclosed material upon the Fire District by forwarding same to its principle offices which address is 262 Crosswicks Road, Bordentown Township, New Jersey (08505).

Very truly yours,

JOHN F. PILLES, JR.

JFP/krs
Enclosures
cc:     Mr. David J. MacFarland
        Bordentown Township Fire District No. 2
        01-0707

JOHN F. PILLES, JR., ESQ.
223 High Street, 2nd Floor
Mount Holly, New Jersey 08060
(609) 267-7711
Attorney for Plaintiff



|  |  |
|---|---|
| DAVID J. MacFARLAND, | SUPERIOR COURT OF NEW JERSEY |
|  | BURLINGTON COUNTY |
| Plaintiff, | LAW DIVISION |
| v. | DOCKET NO. |
| COMMISSIONERS OF FIRE DISTRICT NO. 2 IN THE TOWNSHIP OF BORDENTOWN, | CIVIL ACTION |
| BURLINGTON COUNTY, NEW JERSEY,  a body corporate and politic; STEPHEN MONSON, an | VERIFIED COMPLAINT WITH JURY DEMAND |
| elected fire commissioner; MATT DILLON, an elected fire commissioner; JOSEPH FRESCO, an elected fire commissioner; ANDREW WATSON, an elected fire commissioner; and DAVID HORSNALL, an elected fire commissioner, |  |
| Defendants. |  |

The plaintiff, David J. MacFarland, as and for his complaint against the defendants above captioned, says:

## PARTY IDENTIFICATION

1.     The plaintiff, David J. MacFarland (hereinafter "MacFarland"), currently resides at 156 7th Avenue in the Township of Florence, Burlington County, New Jersey.

2.     The defendant, Commissioners of Fire District No. 2 in the Township of Bordentown, Burlington County, New Jersey (hereinafter "Fire District"), is a body corporate and politic organized and existing pursuant to N.J.S.A. 40A:14-70, et seq for the purpose of providing fire suppression and prevention services to the public residing and/or visiting within the geographical area serviced by same governmental entity; and at all times relevant herein, said defendant maintains its

principle offices at 262 Crosswicks Road in the Township of Bordentown, Burlington County, New Jersey.

3.    The defendant, Stephen Monson (hereinafter "Commissioner Monson"), holds public office as an elected commissioner of the Fire District; and this defendant currently resides at 11 Winding Brook Road in the Township of Bordentown, Burlington County, New Jersey.

4.    The defendant, Matt Dillon (hereinafter "Commissioner Dillon"), holds public office as an elected commissioner of the Fire District; and this defendant currently resides at 2 West Constitution Drive in the Township of Bordentown, Burlington County, New Jersey.

5.    The defendant, Joseph Fresco (hereinafter "Commissioner Fresco"), holds public office as an elected commissioner of the Fire District; and this defendant currently resides at 24 Lexington Road in the Township of Bordentown, Burlington County, New Jersey.

6.    The defendant, Andrew Watson (hereinafter "Commissioner Watson"), holds public office as an elected commissioner of the Fire District; and this defendant currently resides at 23 Locust Road in the Township of Bordentown, Burlington County, New Jersey.

7.    The defendant, David Horsnall (hereinafter "Commissioner Horsnall"), holds public office as an elected commissioner of the Fire District; and this defendant currently resides at 15 Oxford Court in the Township of Bordentown, Burlington County, New Jersey.

## FACTUAL ALLEGATIONS

8.    Plaintiff is, at all times relevant herein, employed on a full time basis by the Fire District as a career firefighter.

9.    The Fire District is statutorily empowered by N.J.S.A. 40A:14-81.1 to create paid firefighter positions; and N.J.S.A. 40A:14-81.3 authorizes supervisory authority over such paid personnel to be exercised by the commissioners of the Fire District."

10,   Although firefighters employed by the Fire District possess tenure rights in continuing employment, which can not be deprived absent showing of just cause in compliance with due process as referenced at N.J.S.A. 40A:14-19, et seq, the Fire District is subject to and controlled by the New Jersey Civil Service Act (hereinafter "the Act"), N.J.S.A. 11A:1-1, et seq.

11.   Similar to Title 40A, the Act not only provides, but also requires, a public employer to comply with both procedural and substantive due process components which, by Legislative enactment, thereby creates a property and liberty interest held by such career firefighters protected by the Fourteenth Amendment to the United States Constitution.

12.   With respect to procedural due process, the Act (as expounded by administrative regulations codified at N.J.A.C. 4A:1-1.1, et seq) provides the following rights:

(a)   Prior to taking any action, which would interfere or suspend a career firefighter's continuation in position, the public employer must serve such employee with a Preliminary Notice of Disciplinary Action setting forth the charges premising contemplated suspension or removal and afford said employee the opportunity for a hearing prior to taking such action unless "it is determine that the employee is unfit for duty or is a hazard to any person if permitted to remain on the job, or that an immediate suspension is necessary to maintain safety, health, order or effective direction of public services."  Recited from N.J.A.C. 4A:2-2.5(a)(1).

(b)   In those exceptional instances where the public employer believes the employee unfit for duty or a hazard to any person if permitted to remain on the job, "the employee must first be apprised either orally or in writing of why an immediate suspension is sought, the charges and general evidence in support of the charges and provided with sufficient opportunity to review the charges and the evidence in order to respond to the charges before a representative of the appointing authority;" and even then, were immediate suspension imposed, a Preliminary Notice of Disciplinary

Action with opportunity for a hearing must be served in person or by certified mail within five (5) days following the immediate suspension. See again N.J.A.C. 4A2-2.5(a)(1).

(c)     The aforesaid Preliminary Notice of Disciplinary Action includes notice that the subject employee may request a departmental hearing which, if requested, shall be held within thirty (30) days of the Preliminary Notice of Disciplinary Action unless waived by the employee or a later date as agreed to by the parties. See, N.J.A.C. 4A:2-2.5(d). In the alternative, an employee may waive opportunity for departmental hearing whereupon a Final Notice of Disciplinary Action would be issued. See, N.J.A.C. 4A:2-2.5(c).

(d)     In addition, the employee is provided opportunity to review the evidence supporting the charges and present and examine witnesses incidental to a departmental hearing conducted pursuant to N.J.A.C. 4A:2-2.6.

(e)     Should the disciplinary action impose five (5) days or more suspension, then the employee has a procedural due process right to request de novo hearing through the Merit System Board within the New Jersey Department of Personnel. See, N.J.A.C. 4A:2-2.8 and 4A:2-2.9(b).

(f)     As alleged supra, immediate suspension could be imposed upon MacFarland only upon a showing that he "is unfit for duty or is a hazard to any person if permitted to remain on the job, or that an immediate suspension is necessary to maintain safety, health, order, or effective direction of public services," which defines the just cause standard necessary to interfere with said plaintiff's property and/or liberty interests incidental to uninterrupted maintenance of employment position.

(g)     The Act further imposes upon the public employer the burden of proof pursuant to N.J.S.A. 11A:2-21.

13.     MacFarland has been suspended without pay for three (3) months effective on or

about January 29, 2009 on the allegation that a psychologist's evaluation conducted on January 14, 2009 has deemed said plaintiff unfit for duty as a firefighter. Annexed hereto as Attachment "A" is a copy of correspondence dated January 29, 2009 addressed to MacFarland communicating the defendants' decision and action.

14.    The defendants have failed and refused to provide MacFarland with any procedural due process as required by the Act notwithstanding request made by the plaintiff, through his attorney in correspondence dated February 6, 2009, for same. A copy of said correspondence is annexed hereto as Attachment "B".

15.    In addition to making such request to be afforded procedural due process as required by the Act addressed directly to the defendants, the plaintiff through his attorney communicated same to the Fire District's solicitor, Richard M. Braslow, Esq. (hereinafter "Braslow"), via correspondence dated February 13, 2009. A copy of said letter is annexed hereto as Attachment "C".

16.    When no response was received from the defendant in timely manner, MacFarland sought administrative intervention by filing appeal through the Merit System Board. Annexed hereto as Attachment "D" is a copy of said appeal dated February 19, 2009.

17.    Braslow did contact plaintiff's attorney by telephone to advise that the Fire District had neither requested nor authorized his involvement in this matter. Such communication was confirmed by correspondence dated March 5, 2009 annexed hereto as Attachment "E".

18.    The Merit System Board thereafter communicated request for supplemental submissions by the parties in correspondence dated March 5, 2009, a copy of which is annexed hereto as Attachment "F".

19.    Commissioner Watson and Commissioner Monson responded to the Merit System Board, on behalf of the Fire District, by correspondence dated March 13, 2009. A copy of said

response, without exhibits as referenced therein, is annexed hereto as Attachment "G".

20.    Conspicuously absent from defendants' aforesaid response is any discussion or justification as to the reasons the Fire District denied and refused MacFarland procedural due process as required by the Act; and instead, the defendants proffered argument allegedly justifying its decision to impose ninety (90) day suspension upon the plaintiff.

21.    MacFarland responded to the Merit System Board by correspondence dated April 3, 2009, a copy of which is annexed hereto as Attachment "H", focusing upon defendants' failure to comply with the Act.

22.    To date, the Merit System Board has not provided adjudication in this matter.

## FIRST COUNT

23.    The defendants' conduct violated the Fourteenth Amendment to the United States Constitution (hereinafter "Federal Constitution") by depriving the plaintiff property and/or liberty interests incidental in continuing employment with the Fire District without due process of law.

        (a)    With regard to procedure, defendants have failed to provide the plaintiff with meaningful notice in timely manner concerning the basis for imposing suspension, an opportunity to be heard either/both prior to and/or after the imposition of ninety (90) day suspension without pay, and an opportunity to obtain and review the psychological reports and other documentary basis upon which the public employer has premised its decision, which rights are as explicitly defined and required by state law.

        (b)    With regard to substance, the defendant's decision to impose ninety (90) day suspension without pay lacks just cause in that, at all times relevant to the suspension, the plaintiff was physically excused from duty since he suffers a medical condition addressable through the New Jersey Workers Compensation Act (hereinafter "W.C.A."), N.J.S.A. 34:15-1, et seq, on which claim

MacFarland is represented by Robert R. Hahnemann, Jr., Esq. as evidenced by correspondence dated February 5, 2009 annexed hereto as Attachment "I". Assertion by defendants that the Fire District had just cause to impose suspension is both ludicrous and irrational since the plaintiff would not be on employment premises impacting employer's interest due to his placement on medical leave.

24.     MacFarland has been damaged by defendants' action in the following, non-exclusive, manner:

(a)     There is an employment practice involving the Fire District whereby firefighters on medical leave of absence for workers compensation injuries receive their full weekly pay. Whatever weekly benefits are received by the employee on workers compensation leave are remitted to the Fire District. This practice is not unique to only the defendants in this case; and it is a common practice in other fire districts and municipal departments throughout the State. As a result of suspension imposed, MacFarland will receive only his temporary benefits under the W.C.A. which is less than his full wage entitlement.

(b)     Since the defendants are not paying MacFarland wages for the ninety (90) day suspension term, there are no contributions being made to the Police and Firemen Retirement System within the New Jersey Division of Pensions. Accordingly, MacFarland loses the three months of pension time accrual by suspension imposed. The plaintiff has not yet been "vested" with pension entitlement, since he has not been employed for five (5) years as required by state law, and consequently, plaintiff can ill afford interruption of any accrual time.

25.     As a proximate result of the defendants' unlawful actions aforesaid, MacFarland has suffered damages for which he seeks appropriate equitable and legal redress under the provisions of the Civil Rights Act of 1871 (hereinafter "Section 1983"), 42 U.S.C. §1983.

26.     The defendant, Fire District, is at all times relevant herein a public entity subject to suit

under Section 1983.

27.     The fire commissioners, individually named as party defendants, have by their conduct perpetrated a state action within the meaning of the Fourteenth Amendment to the Federal Constitution thereby making each liable to plaintiff under Section 1983.

## SECOND COUNT

28.     The plaintiff repeats each and every allegation set forth in the proceeding Count and incorporates the same herein as though full set forth at length.

29.     In addition to violating the procedural and substantive due process protection afforded by the Fourteenth Amendment to the Federal Constitution, the defendants have also violated same constitution's First Amendment guarantee to bodily privacy similarly actionable under the provisions of Section 1983.

30.     At all times relevant herein, the defendants failed to demonstrate a compelling state interest incidental to requiring MacFarland undergo psychological counseling and/or impose employment suspension to ensure compliance with such directive.

31.     Even assuming, arguendo, that defendants are found to possess rights to invade the constitutionally protected right of bodily privacy, the defendants have failed and refused to provide minimal procedural due process as otherwise required.

32.     As a proximate result of defendants' unlawful actions, the plaintiff has suffered damages for which he seeks appropriate equitable and legal redress through this litigation.

## THIRD COUNT

33.     The plaintiff repeats each and every allegation set forth in the proceeding Counts and incorporates the same herein as though full set forth at length.

34.     In addition to possessing constitutionally protected rights premised upon the First and

Fourteenth Amendments to the Federal Constitution, MacFarland also enjoys protection against the public employer's intrusion into medial, emotional and psychological interests pursuant to the Americans with Disabilities Act (hereinafter "A.D.A."), 42 U.S.C. §12101, et seq, which federal statute states that an employer "shall not require a medical examination and shall not make inquires of a . . . (current) employee as to whether such employee is an individual with the disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be related and consistent with business necessity."

35.     The defendants lack any "business necessity" warranting MacFarland's referral to the Fire District's psychologist, Robert L. Tannenbaum, Ph.D. (hereinafter "Tannenbaum"), in the first instance and/or basis to require MacFarland to comply with Tannenbaum's recommendations.

36.     The A.D.A. creates a property (and/or liberty) interest in the privacy of an individual's health condition which may not be infringed by an employer, either public or private, except in those exceptional situations defined by same federal statute which are not relevant and/or applicable sub judice.

37.     As a proximate result of the defendants' unlawful actions, the plaintiff has suffered damages for which he seeks appropriate equitable and legal redress through this litigation.

FOURTH COUNT

38.     The plaintiff repeats each and every allegation set forth in the proceeding Counts and incorporates the same herein as though full set forth at length.

39.     Even assuming, arguendo, that MacFarland suffers disability within the meaning of such term as defined by the A.D.A. or handicap within the meaning of such term as defined by the New Jersey Law Against Discrimination (hereinafter "L.A.D."), N.J.S.A. 10:5-1, et seq, whereupon the defendants possess a compelling state interest requiring the plaintiff to participate in ongoing

counseling, his placement on ninety (90) day suspension without pay is not a reasonable accommodation for such disability/handicap.

40.    Since the defendants have, themselves, characterized MacFarland as an individual suffering disability/handicap in need of addressment, his placement on ninety (90) day suspension without pay constitutes discriminatory and/or retaliatory action for such status, thereby violating both the A.D.A. and L.A.D.

41.    As a proximate result of defendants' unlawful actions -- both in context with defendants' failure to afford plaintiff medical leave under the provisions of the federal Family and Medical Leave Act (hereinafter "F.M.L.A."), 29 U.S.C. §2601, et seq whereby the plaintiff could have used earned and available vacation, sick and personal time thereby continuing to derive regular weekly income and/or in plaintiff's placement on suspension without pay status which can only be regarded as discriminatory and retaliatory for the disability/handicap condition identified by Tannenbaum -- the plaintiff has suffered damages for which he seeks appropriate legal and equitable redress through this litigation.

## FIFTH COUNT

42.    The plaintiff repeats each and every allegation set forth in the proceeding Counts and incorporates the same herein as though full set forth at length.

43.    The plaintiff has incurred, and will continue to incur, attorney fees and legal costs incidental to the prosecution of the action sub judice.

44.    The Civil Rights Attorney Fees Awards Act of 1976, 42 U.S.C. §1988, empowers the Court to award reasonable attorney fees and legal costs to a prevailing plaintiff in a Section 1983 action, which recovery plaintiffs seek, as provided by said statute.

45.    The A.D.A., L.A.D. and F.M.L.A. similarly authorize award of reasonable attorney fees

to a plaintiff prevailing on such claims, which recovery plaintiffs seek, as provided by said statutes.

## SIXTH COUNT

46.    The plaintiff repeats each and every allegation set forth in the proceeding Counts and incorporates the same herein as though full set forth at length.

47.    The Superior Court of New Jersey is empowered with subject matter jurisdiction to conduct a hearing de novo by way of common law right certiorari as discussed in Romanowski v. Brick Tp., 185 N.J. Super 197 (Law Div. 1982), aff'd per curiam 192 N.J. Super 79 (App. Div. 1983), and as applied in Akridge v. Barres, 118 N.J. Super 557 (Ch. Div. 1972), aff'd 122 N.J. Super 476 (App. Div.), aff'd 65 N.J. 266 (1973), cert. den. 420 U.S. 966, 95 S. Ct. 1361, 43 L. Ed. 2d 445.

48.    The plaintiff requests that the Court exercise its certiorari authority to review and redress defendants' decision to impose ninety (90) day suspension without pay against him.

WHEREFORE, the plaintiff demands judgment against the defendants for compensatory, incidental and punitive damages; for declaratory judgment that just cause, as required and established by state law, did not exist upon which to substantiate imposing any period of suspension without pay; for declaratory judgment that defendants failed and refused to provide plaintiff with procedural due process violative of both the Federal Constitution and state law, which provisions are referenced in this pleading; for equitable relief in the form of an injunction precluding the defendants from continuing plaintiff's placement on suspension without pay status; for mandamus requiring the expungement of this incident from any and all records maintained by the defendant involving the plaintiff such that same neither can nor will be referenced in futuro; for equitable relief in restoring the plaintiff to status quo ante his placement on suspension, without pay, status, and in connection therewith, award plaintiff recovery of such back wages which would have been paid to him in accord with past practice involving individuals placed on workers compensation leave of absence; for attorney fees, interest and

costs of suit; and for such other relief as may be deemed appropriate and/or necessary albeit not explicitly requested herenow.

## JURY DEMAND

The plaintiff hereby demands a trial by a jury of twelve (12) persons on all issues as provided by N.J. Court Rule 1:8-1 as made specifically applicable to the Law Division per N.J. Court Rule 4:35-1.

## RESERVATION OF CLAIMS

Plaintiff reserves the right to add any additional claims, counts or parties as same may become known during the course of this litigation.

## RULE 4:5-1 CERTIFICATION

Pursuant to N.J. Court Rule 4:5-1, the undersigned hereby states that the within matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration proceeding. To the best of plaintiff's belief, no other judicial actions or arbitration proceedings are contemplated. The undersigned notes, however, that an administrative appeal has been filed with the Merit System Board within the New Jersey Department of Personnel asserting some, but not all, claims as alleged herein, which adjudication has not yet been made. Further, other than the parties set forth in this pleading, the undersigned knows of no other party that should be joined in the above action. Finally, the undersigned recognizes the continuing obligation of each party to file and serve on all parties and the Court an amended certification if there is a change in the facts stated in this original certification.

Dated: 4/29/09

_____
John F. Pilles, Jr.
Attorney for Plaintiff

## CERTIFICATION OF VERIFICATION

The undersigned plaintiff, identified in this pleading, hereby certifies in compliance with N.J. Court Rule 1:4-4(b) and 1:4-7 that he has read the within complaint and that the allegations set forth therein are true to the best of his knowledge and belief. The undersigned further certifies that the foregoing statements made by him are true and he is aware that if any of the foregoing statements made by him are wilfully false, he is subject to punishment.

Dated:

_____

David J. MacFarland

# FIRE DISTRICT No. 2 BORDENTOWN TOWNSHIP



**COPY**

**CONFIDENTIAL**



**262 Crosswicks Road
Bordentown Twp., NJ 08505**

January 29, 2009

**VIA HAND DELIVERY AND CERTIFIED MAIL**
David MacFarland
156 Seventh Avenue
Roebling, NJ 08554

**PRIVILEGED AND CONFIDENTIAL COMMUNICATION**

Re:    Duty Status

Dear Firefighter David MacFarland:

Pursuant to your psychological evaluation on January 14, 2009, Dr. Robert Tanenbaum has deemed you unfit for duty as a firefighter. As a result this letter is to inform you that as of January 29, 2009, you are being suspended from duty without pay. Dr. Tanenbaum has recommended that you be suspended pending a minimum of three months of ongoing psychological/psychiatric treatment. You must obtain counseling from a qualified, doctoral level, certified psychologist or psychiatrist. Treatment should be of at least three months duration on a once weekly basis and it is highly suggested that you give written authorization for the treating professional to notify Dr. Tanenbaum on a monthly basis on your ongoing involvement in treatment and progress. Kindly read and review the attached "Request and Authorization to Release/Obtain Records and Information". Please sign and return same to Captain Herzberg by February 5, 2009.

Furthermore, it will be your responsibility to ensure that such treatment communications (notes) are regularly forwarded to Captain Herzberg and Dr. Tanenbaum.

Treatment should not be terminated until mutually agreed upon by you and your therapist. Upon completion of treatment, you must have the therapist write a letter to Captain Herzberg indicating that treatment has been completed; specifying the degree of improvement seen, and that you are or are not capable of continuing to fully carry out your job duties.

Upon receipt of notice of your completed treatment, Fire District #2 will then send you to Dr. Tanenbaum, and/or any other appropriately credential professional, for the purposes of undergoing an updated psychological fitness for duty re-evaluation to independently verify your reported progress in treatment. Your ability to return to duty

(609) 298-8505



# ℂCOPY

## ⊓ CONFIDENTIAL

will not occur unless and until this psychological fitness for duty re-evaluation is complete and satisfactory evidence is provided demonstrating your fitness for duty.

Fire District #2 will allow you to maintain your health benefits during this treatment process so that you may obtain the appropriate counseling through your insurer's provider list. As a result, you must provide Captain Herzberg with a written list of possible candidates to provide treatment by February 5, 2009. This list will be reviewed by a licensed professional and subsequently returned to you indicating acceptable candidates to provide you treatment. If no candidates from your list are deemed acceptable, the fire district will make best efforts to locate a treating physician within your provider network but cannot guarantee the outcome of same.

As an aside, your psychological evaluation is property of the fire district and not subject to review absent a court order or other applicable law.

In closing, the fire district supports you in achieving overall health and well being. We wish you the best and understand this is a trying time. However, please understand that failure to complete or continue any portion of this treatment program may result in the immediate termination of your employment as firefighter from the fire district. Nonetheless, do not hesitate to contact us should you have any questions or concerns during this period.

Respectfully,

Jake Archer
Chairman
Fire District #2
Bordentown Township



## *John F. Pillar, Jr.*

Attorney at Law

223 High Street - 2nd Floor

Mount Holly, New Jersey 08060

---

February 6, 2009

Bordentown Township Fire District No. 2
262 Crosswicks Road
Bordentown, New Jersey 08505

Attention:     Jake Archer
              Commission Chairman

Re:     David J. MacFarland
        and Bordentown Twp. Fire District No. 2
        3 Month Suspension Without Pay
        Our File No. 01-0707

Dear Chairman Archer:

Please be advised that I represent F/F David J. MacFarland. I understand that you had informed him by telephone on Thursday, January 29, 2009 that he has been suspended three (3) months without pay premised upon a forensic psychologist's report recently requested and received by your Fire District. It is my understanding that same psychologist had evaluated F/F MacFarland on two (2) past occasions concluding him fit to assume and/or continue fire suppression duties.

The administrative regulations promulgated under the New Jersey Civil Service Act, N.J.S.A. 11A:1-1, et seq, are codified at N.J.A.C. 4A:1-1.1, et seq. An employee may be suspended immediately and prior to a hearing under two circumstances. The first occurs "where it is determined that the employee is unfit for duty or is a hazard to any person if permitted to remain on the job, or that an immediate suspension is necessary to maintain safety, health, order or effective direction of public services." See, N.J.A.C. 4A:2-2.5(a)(1). The second occurs when the employee "is formally charged with a crime of the first, second or third degree, or a crime of the fourth degree on the job or directly related to the job." See, N.J.A.C. 4A:2-2.5(a)(2). Notwithstanding whether suspension is immediate under either N.J.A.C. 4A:2-2.5(a)(1) or (a)(2), "the employee must first be apprised either orally or in writing, of why an immediate suspension is sought, the charges and general evidence in support of the charges and provided with sufficient opportunity to review the charges and the evidence in order to respond to the charges before a representative of the appointing authority."

This is otherwise known as a "Loudermill" hearing. Indeed, when an employee is being

---

Telephone (609) 267-7711
Telefax (609) 267-9303

Licensed to Practice in:

New Jersey
Texas

Bordentown Township Fire District No. 2
Re: David J. MacFarland
February 6, 2009
Page 2

suspended because s/he is believed unfit for duty, a hazard to any person if permitted to remain on the job, or that such suspension is necessary to maintain health and safety of public services, a preliminary notice of disciplinary action with opportunity for a hearing must be served in person or by certified mail within five (5) days following the immediate suspension. See again, N.J.A.C. 4A:2-2.5(a)(1).

Please accept this correspondence as formal request that your Fire District immediately provide to my office true and complete copies of the following:

1.  All written correspondences and/or electronic communications addressed to any and all forensic psychologists and/or psychiatrists from (and/or on behalf of) your Fire District requesting such professional conduct an evaluation upon F/F MacFarland;

2.  All written correspondences and/or electronic communications addressed to any and all forensic psychologists and/or psychiatrists from (and/or on behalf of) your Fire District providing to such professional any information referring, characterizing, depicting, complaining and/or involving F/F MacFarland;

3.  All traditionally mailed and/or electronically transmitted documentation provided by (and/or on behalf of) your Fire District to any and all forensic psychologist and/or psychiatrist upon which reference, characterizes, depicts, and/or otherwise involves F/F MacFarland intended to be used incidental to any requested evaluation to be performed upon my client which may include, but is not limited to, components of F/F MacFarland's personnel file;

4.  Identification of all agents and/or representatives of your Fire District who had any personal, telephonic and/or electronic mail communication with any of the professionals referenced above with indication as to when such individuals conducted and/or engaged in such communication;

5.  All professional reports received by (and/or on behalf of) the Fire District from any and all forensic psychologists and/or psychiatrists upon which the public employer has premised its decision to suspend immediately, without pay, F/F MacFarland; and

6.  All professional reports received by (and/or on behalf of) the Fire District from any other forensic psychologist and/or psychiatrist referencing and/or involving F/F MacFarland at any time.

Bordentown Township Fire District No. 2
Re: David J. MacFarland
February 6, 2009
Page 3


You are reminded that all professional reports supplied to your Fire District from any forensic psychologist and/or psychiatrist, upon which decision was made to suspend immediately without pay F/F MacFarland from employment duties, must comport to the requirements outlined at N.J.A.C. 4A:4-6.5(e)(1) through (5). In connection herewith, my discovery demands should be understood as including all components of that regulation.

Request is also demanded that your Fire District expound, in writing, as to why it did not provide my client with a "Loudermill" hearing and/or the procedural due process rights outlined by administrative code provisions prior to placing my client on suspension, without pay, employment status.

Very truly yours,

JOHN F. PILLES, JR.

JFP/krs
cc:    Mr. David J. MacFarland
       Richard M. Braslow, Esq.
       01-0707

# *John F. Pilles, Jr.*

Attorney at Law

223 High Street - 2nd Floor

Mount Holly, New Jersey 08060

February 13, 2009

Richard M. Braslow, Esq.
516 Fielders Lane
Toms River, NJ 08755

Re:     David J. MacFarland
        and Bordentown Twp. Fire District No. 2
        3 Month Suspension Without Pay
        Our File No. 01-0707

Dear Mr. Braslow:

I understand that you are the solicitor for Bordentown Township Fire District No. 2 (hereinafter "the Fire District"). I represent F/F David J. MacFarland who is, at all times relevant herein, employed by the Fire District as a full time and permanent firefighter.

Pursuant to our telephonic conversation yesterday afternoon, I am enclosing herewith copy of correspondence addressed to the Fire District's Chairman, Jake Archer, mailed this same date.

Please advise, at your earliest convenience, whether you will be involved in this matter. I will provide the Fire District with a reasonable time period within which to respond to my discovery requests and to provide my client with due process as mandated by the New Jersey Civil Service Act, N.J.S.A. 11A:1-1, et seq. Should I not receive reasonable response, then I shall have no other alternative but refer this matter to the New Jersey Department of Personnel on complaint.

Very truly yours,

JOHN F. PILLES, JR.

JFP/krs
cc:     Mr. David J. MacFarland
        01-0707

Telephone (609) 267-7711
Telefax (609) 267-9303

Licensed to Practice in:

New Jersey
Texas



John E. Biller, Jr.

Attorney at Law

223 High Street - 2nd Floor

Mount Holly, New Jersey 08060

February 19, 2009

State of New Jersey
Merit System Board
3 Station Plaza
44 South Clinton Avenue
Post Office Box 312
Trenton, New Jersey 08625-0312

      Re:    David J. MacFarland
             and Bordentown Twp. Fire District No. 2
             3 Month Suspension Without Pay
             Our File No. 01-0707

Dear Sir or Madam:

    I represent the petitioner, David J. MacFarland, whom the public employer has suspended without pay for three months on the allegation that a psychological evaluation conducted on January 14, 2009 has deemed him unfit for duty as a firefighter. It is my understanding that same psychologist had evaluated F/F MacFarland on two (2) past occasions concluding him fit to assume and/or continue fire suppression duties.

    It is my understanding that an employee may be suspended immediately and prior to a hearing under two circumstances. The first occurs "where it is determined that the employee is unfit for duty or is a hazard to any person if permitted to remain on the job, or that an immediate suspension is necessary to maintain safety, health, order or effective direction of public services." See, N.J.A.C. 4A:2-2.5(a)(1). The second occurs when the employee "is formally charged with a crime of the first, second or third degree, or a crime of the fourth degree on the job or directly related to the job." See, N.J.A.C. 4A:2-2.5(a)(2). Notwithstanding whether suspension is immediate under either N.J.A.C. 4A:2-2.5(a)(1) or (a)(2), "the employee must first be apprised either orally or in writing, of why an immediate suspension is sought, the charges and general evidence in support of the charges and provided with sufficient opportunity to review the charges and the evidence in order to respond to the charges before a representative of the appointing authority." Such "Loudermill" hearing has not been afforded to the petitioner.

    In addition, N.J.A.C. 4A:2-2.5(a)(1) mandates that the public employer serve "in person or by

Merit System Board
Re: David J. MacFarland
February 19, 2009
Page 2

certified mail within five (5) days following the immediate suspension" a Preliminary Notice of Disciplinary Action with opportunity for a hearing. Since it appears that the public employer's suspension has been premised upon this administrative regulation, the procedural due process requirements are to be afforded. As of this late date, however, the petitioner has neither received a Preliminary Notice of Disciplinary Action nor been afforded a departmental hearing from which a final notice of disciplinary action would be issued thereby premising de novo review by your administrative agency in accord with the New Jersey Civil Service Act, N.J.S.A. 11A:1-1, et seq.

I annex hereto as Attachment "A" copy of my correspondence addressed to the public employer dated February 6, 2009 requesting specificity of the factual basis premising the appointing authority's decision to suspend my client without pay and demand for departmental hearing in accord with the aforecited regulations. As of this late date, I have not received the courtesy of a response.

I also annex hereto as Attachment "B" copy of correspondence dated January 29, 2009 served upon my client from the appointing authority. This written communication confirms, inter alia, the verbal notice afforded appellant by telephone conference with Chairman Jake Archer on Thursday, January 29, 2009.

Although I have only recently been retained by F/F MacFarland, my preliminary investigation suggests possible political reprisal contra N.J.A.C. 4A:2-5.1(a) and/or (b). Such reprisals have been manifested by past minor disciplinary actions, the most recent evidenced by Final Notice of Disciplinary Action dated February 5, 2009 imposing a forty (40) hour suspension.

The petitioner requests reinstatement to employment with full back pay and benefits together with such further compensatory and incidental damages as may be deemed appropriate, including award of attorney fees, as generally provided by N.J.A.C. 4A:2-2.10, 4A:2-2.11 and 4A:2-2.12.

It is respectfully submitted that an evidentiary hearing should be conducted in this matter since there exists a material and controlling dispute of facts, as prescribed by N.J.A.C. 4A:2-1.1(d). Request is therefore made that this matter, when transferred to the New Jersey Office of Administrative Law, not be processed as a summary action since extensive discovery via interrogatories appears necessary.

Please refer all communications involving this matter directly to my office. This appeal is being mailed to you certified, with return receipt requested, so as to ensure your receipt of same.

Merit System Board
Re: David J. MacFarland
February 19, 2009
Page 3


Very truly yours,

JOHN F. PILLES, JR.

JFP/krs
Enclosures
cc:   F/F David J. MacFarland
      156 7th Avenue
      Roebling, New Jersey 08554

      Bordentown Township Fire District No. 2
      262 Crosswicks Road
      Bordentown, New Jersey 08505
      Attention:   Jake Archer
                   Commission Chairman

      01-0707

## John F. Pilles, Jr.

Attorney at Law

223 High Street - 2nd Floor

Mount Holly, New Jersey 08060

March 5, 2009

Richard M. Braslow, Esq.
516 Fielders Lane
Toms River, NJ 08755

Re:  David J. MacFarland
     and Bordentown Twp. Fire District No. 2
     3 Month Suspension Without Pay
     Our File No. 01-0707

Dear Mr. Braslow:

Pursuant to our telephonic conversation late Wednesday afternoon, March 4, 2009, I understand that Bordentown Township Fire District No. 2 (hereinafter "Fire District") has not contacted you requesting your involvement in the matter above referred. As you are aware, I have filed an appeal with the New Jersey Department of Personnel - Merit System Board (hereinafter "M.S.B.") contesting the Fire District's placement of my client on ninety day suspension, without pay, for psychological (or psychiatric) reasons. Your office has been provided copy of such appeal.

I am scheduled to take my vacation on a Caribbean cruise from Thursday, March 5, 2009 until Sunday, March 15, 2009. I expect to be in my office the next business day. Since I have not received any response whatsoever from the Fire District to my previous correspondence dated February 6, 2009, wherein I requested discovery of all reports premising the Fire District's decision, I may have no other alternative but seek immediately application for emergent relief.

Would you please contact the Fire District to inquire as to their intent in this matter.

Very truly yours,

JOHN F. PILLES, JR.

JFP/krs

cc:  Mr. David J. MacFarland
     01-0707



JON S. CORZINE
*GOVERNOR*

**STATE OF NEW JERSEY**
**CIVIL SERVICE COMMISSION**
Merit System Practices and Labor Relations
Written Record Appeals Unit
P.O. Box 312
Trenton, New Jersey 08625-0312
Telephone: (609) 292-8227    Fax: (609) 984-0442

HOPE L. COOPER
*Chair/Chief Executive O*

March 5, 2009

John F. Pilles, Esq.
223 High Street
2ⁿᵈ Floor
Mount Holly, New Jersey 08060

Jake Archer, Chairman
Bordentown Township Fire District 2
262 Crosswicks Road
Bordentown, New Jersey 08505

Re:    **David MacFarland; CSC Docket No. 2009-2959;**
       **Request for Interim Relief**

Dear Messrs. Pilles and Archer:

The above-referenced matter has been received in this office. A decision in this matter will be rendered on the basis of written argument and documentation. A copy of the appellant's submission has been enclosed.

In your submissions, please address the following factors for consideration in evaluating petitions for interim relief pursuant to *N.J.A.C.* 4A:2-1.2(c):

1. Clear likelihood of success on the merits by the petitioner;
2. Danger of immediate or irreparable harm;
3. Absence of substantial injury to other parties; and
4. The public interest.

**The parties may submit additional information within five (5) calendar days of receipt of this letter.** Please indicate on your cover letter that you have sent copies of all materials submitted to the other party named above. If a party wishes to review the file, please contact this office at the above-listed telephone number to schedule an appointment.

Sincerely,

Kelly A. Glenn
Personnel and Labor Analyst

Enclosure
c: David MacFarland

# FIRE DISTRICT No. 2 BORDENTOWN TOWNSHIP



## 262 Crosswicks Road
## Bordentown Twp., NJ 08505

March 13, 2009

Ms. Kelly A. Glenn, Personnel & Labor Analyst
Written Records Appeals Unit
Merit System Practices & Labor Relations
Civil Service Commission
P.O. Box 312
Trenton, New Jersey 08625-0312

    Re:    David MacFarland; CSC Docket No. 2009-2959
             Response to Request for Relief

Dear Ms. Glenn:

    This letter and the accompanying enclosures (see appended list) are submitted as additional information and in response to your correspondence dated March 5, 2009, in the above captioned matter. Please note that the Bordentown Township Board of Fire Commissioners, Fire District No. 2 (hereafter Commissioners), received the above referenced correspondence on Tuesday, March 10, 2009.

    It is the view of the Commissioners that the enclosed information will enable you to render a decision denying the relief requested by the Appellant, MacFarland. In support of our view we submit that the Appellant has offered no evidence sufficient to meet or satisfy the four (4) factors listed for consideration in your evaluation of a petition. The Commissioners also wish to draw your attention to the following pertinent facts, as supported by the enclosed materials.

    1.    In the most recent psychological evaluation of the Appellant, it is noted the Appellant admitted his failure to satisfy his January 2006 agreement to follow up requirements that he "initiate a course of psychological counseling ..., with a focus on stress management, work relationships, and control of alcohol consumption." See: "Fitness for Duty" Report, Jan. 25, 2006, prepared by Robert L. Tanenbaum, Ph.D., at p. 6; and "Fitness for Duty (Firefighter)" Report, Jan. 21, 2009, prepared by Robert L. Tanenbaum, Ph.D., at

David MacFarland; CSC Docket No. 2009-2959                                    2

        pp. 3, 5-6.[1]

2.     It is also noted that Appellant apparently continues to have an alcohol abuse issue, a fact noted in the 2006 evaluation report. See: Tanenbaum, "Fitness for Duty" Report, Jan. 25, 2006, at p. 4, 5, 6; and Tanenbaum, "Fitness for Duty (Firefighter)" Report, Jan. 21, 2009, at p. 5.

In light of these specific facts the Commissioners submit that there is: No clear likelihood of success of this petition on the merits; The Appellant's continued work place behaviors, as well as his failure to "initiate a course of psychological counseling ...," within the close working environment of a fire house could constitute a danger to him, those working with him, and the public; and the vital need to serve the public interest in having a fully functioning fire fighting force to protect the community.

The Commissioners welcome this opportunity to present the CSC with a complete record in this matter, and trust that, upon your review, you will determine this matter is without merit.

             For the Bordentown Township, Board of Fire
             Commissioners, Fire District No. 2
             Respectfully submitted,

             Andrew Watson, Chairman
             Commissioner

             Stephen Monson
             Commissioner

encl. (See Appendix)

c.    John J. Pilles, Jr., Esq., Attorney for Appellant MacFarland, w/encl
      Richard M. Braslow, Esq., Attorney for Bordentown Township, Board of Fire
      Commissioners, Fire District No. 2

---

[1] Please note that the "Fitness for Duty" Reports, included herein, bear a heading "Privileged & Confidential" and are subject to federal (HIPPA) and State laws governing privacy. Notwithstanding that provision, these "Fitness for Duty" Reports have been included herein to provide a complete record in this matter. Moreover, in as much as counsel for the Appellant made specific reference to those Reports in his transmittal letter to the CSC, we interpret that reference as a waiver of any claim of privilege.

David MacFarland; CSC Docket No. 2009-2959

3

## APPENDIX

**Ra**     **Description of Document(s)**

1      Approved Therapists Letter, dated Feb. 17, 2009, to David MacFarland from Andrew Watson, Chairman, Bordentown Township Board of Fire Commissioners, Fire District No. 2, 1 page.

2      CMRRR card for receipt of Ra 1

3      Approved Therapists Letter, dated Feb. 8, 2009, to David MacFarland from Jake Archer, Chairman, Bordentown Township Board of Fire Commissioners, Fire District No. 2, 1 page.

4      Acknowledgment of receipt form, dated Feb. 8, 2009, Approved Doctor's List, Ra 3

5      CMRRR receipt & card for receipt of Ra 3

6      Final Notice of Disciplinary Action (31-B) Suspending Firefighter David MacFarland, for 40 hours, dated as served Feb. 8, 2009, 1 page.

7      Attachment to Final Notice of Disciplinary Action (31-B) Suspending Firefighter David MacFarland, 1 page.

8      Acknowledgment of receipt form, dated Feb. 8, 2009, 31-B Final Notice of Disciplinary Action, Ra 7

9      CMRRR card for receipt of Ra 8

10     Duty Status Letter, dated Jan. 29, 2009, to David MacFarland from Jake Archer, Chairman, Bordentown Township Board of Fire Commissioners, Fire District No. 2, 2 pages.

12     CMRRR receipt of Ra 10

13     Acknowledgment of receipt form, dated Jan. 30, 2009, Phone conversation with Archer, Ra 10

14     CMRRR card for receipt of Ra 10

15     Institute for Forensic Psychology, Privileged & Confidential Psychological Report, Fitness for Duty (Firefighter), to Capt. Joseph Herzberg, Bordentown Township Fire District No. 2, Re: FF David MacFarland, dated Jan. 21, 2009, prepared by prepared by

David MacFarland; CSC Docket No. 2009-2959                                            4

## APPENDIX

**Ra**      **Description of Document(s)**

         Robert L. Tanenbaum, Ph.D., 6 pages.

21       Letter Requesting Formal Hearing, dated Jan 10, 2009, to Capt. Herzberg, from David
         MacFarland, 1 page.

22       Notice of Disciplinary Action, letter, dated Jan. 9, 2009 to Firefighter David MacFarland
         from Capt. Joseph Herzberg, 1 page.

23       Preliminary Notice of Disciplinary Action (31-A), Dave MacFarland, Firefighter, dated
         as served Jan. 9, 2009, 1 page

24       Institute for Forensic Psychology, undated letter to FF MacFarland, from Robert L.
         Tanenbaum, Ph.D., 1 page.

25       Appointment Letter, dated Jan. 9, 2009 to FF Dave MacFarland from Capt. Herzberg, 1
         page.

26       Institute for Forensic Psychology, Privileged & Confidential Psychological Report,
         Fitness for Duty (Firefighter), to Lt. Frank Nucera, Bordentown Township Fire District
         No. 2, Re: David MacFarland, dated Jan. 25, 2006, prepared by prepared by Robert L.
         Tanenbaum, Ph.D., 6 pages.

32       Blank Request & Authorization to Release/Obtain Records & Information form, Institute
         for Forensic Psychology, undated and unsigned, referenced in Ra 10 & Ra 15, 2 pages



Attorney at Law

223 High Street - 2nd Floor

Mount Holly, New Jersey 08060

April 3, 2009

State of New Jersey
Civil Service Commission
Merit System Practices and Labor Relations
Written Record Appeals Unit
Post Office Box 312
Trenton, New Jersey 08625-0312

     Attention:     Kelly A. Glenn
                      Personnel and Labor Analyst

     Re:     David J. MacFarland
            C.S.C. Dkt. No. 2009-2959
            Request for Interim Relief
            Our File No. 01-0707

Dear Ms. Glenn:

     I represent the petitioner, David J. MacFarland (hereinafter "F/F MacFarland"), who is, at all times relevant herein, employed on a full time basis as a career firefighter by Bordentown Fire District No. 2 (hereinafter "Fire District"). My office has filed an administrative appeal with your agency (hereinafter "Commission") contesting F/F MacFarland's placement on suspension without pay for three (3) months on the allegation that a psychological evaluation conducted on January 14, 2009 has deemed him unfit for duty as a firefighter. F/F MacFarland's administrative appeal dated February 19, 2009 (hereinafter "Appeal Notice") was forwarded to the Commission by certified mail; and the return receipt card evidences the Commission's receipt of same on February 24, 2009.

     Your correspondence dated March 5, 2009 was not received by me until my return from vacation on March 16, 2009. I indicated to you, during our telephonic conversation on Tuesday, March 17, 2009, that I would be proffering written response. Please accept this correspondence as

Civil Service Commission
Re: David J. MacFarland
April 3, 2009
Page 2


same.[1]

## STATEMENT OF FACTS

In correspondence dated January 29, 2009, F/F MacFarland was informed "that as of January 29, 2009, (he is) being suspended from duty without pay" on recommendation from Robert L. Tannenbaum, Ph.D. that he "be suspended pending a minimum of three months of ongoing psychological/psychiatric treatment."[2]  This written communication had confirmed the verbal notice previously afforded appellant by telephone conversation with the Fire District's Chairman, Jake Archer, on same date.

F/F MacFarland was neither provided copy of Dr. Tannenbaum's report nor advised as to the professional analysis premising his professional opinion.[3]

In correspondence addressed to the Fire District dated February 6, 2009,[4] specificity of the factual basis premising the appointing authority's decision to suspend petitioner without pay was requested.  In addition, this letter communicated demand for departmental hearing.  The courtesy of a response was never provided.[5]

---

[1] Preparation of this reply was further delayed by my need to address certain legal issues involving my son's pursuit of a college education in Georgia.  My son suffers with a disability; and the college, at which he is attending, has failed to afford him reasonable accommodation as required by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §793, thereby necessitating my coordination of advocacy with a Georgia attorney.

[2] A copy of said January 29th (2009) correspondence is annexed to F/F MacFarland's Appeal Notice as Attachment "B".  Same is referenced herein as though annexed hereto.

[3] I have been copied with the Fire District's response dated March 13, 2009 to which is annexed Dr. Tannenbaum's report dated January 21, 2009.  This is the first opportunity either F/F MacFarland or myself have had to review this document.  I am in the process now of having petitioner's own psychologist review and respond to same.

[4] A copy of this letter has been annexed to the Appeal Notice as Attachment "A".  Such document is referenced herein as though annexed hereto.

[5] In addition to communicating directly with the Fire District, I also authored two (2) correspondences addressed to respondent's solicitor, Richard M. Braslow, Esq., which were dated February 13 and March 5, 2009.  Both correspondences are annexed hereto as Attachment "C".

Civil Service Commission
Re: David J. MacFarland
April 3, 2009
Page 3

As briefed herebelow, F/F MacFarland has a cause of action against the Fire District premised upon the Civil Rights Act of 1871 (hereinafter "Section 1983"), 42 U.S.C. §1983. Although Section 1983 does not require exhaustion of administrative remedies prior to commencement of judicial proceedings, F/F MacFarland filed his administrative Appeal Notice asserting argument that, since he was not afforded procedural due process, he was without means to address effectively the propriety of the Fire District's interference with his property interest.

## THE FIRE DISTRICT FAILED TO COMPLY
## WITH STATE ADMINISTRATIVE REGULATIONS

The administrative regulations promulgated under the New Jersey Civil Service Act (hereinafter "the Act"), N.J.S.A. 11A:1-1, et seq, are codified at N.J.A.C. 4A:1-1.1, et seq. An employee may be suspended immediately and prior to a hearing under only two circumstances. The first occurs "where it is determined that the employee in unfit for duty or is a hazard to any person if permitted to remain on the job, or that an immediate suspension is necessary to maintain safety, health, order or effective direction of public services." See, N.J.A.C. 4A:2-2.5(a)(1). The second occurs when the employee "is formally charged with a crime of the first, second or third degree, or a crime of the fourth degree on the job or directly related to the job." See, N.J.A.C. 4A:2-2.5(a)(2). Notwithstanding whether suspension is immediate under either N.J.A.C. 4A:2-2.5(a)(1) or (a)(2), "the employee must first be apprised either orally or in writing, of why an immediate suspension is sought the charges and general evidence in support of the charges and provided with sufficient opportunity to review the charges and the evidence in order to respond to the charges before a representative of the appointing authority."[6] Indeed, when an employee is being suspended because s/he is believed unfit for duty, a hazard to any person if permitted to remain on the job, or that such suspension is necessary to maintain health and safety of public services, a Preliminary Notice of Disciplinary Action with opportunity for a hearing must be served in person or by certified mail within five (5) days following the immediate suspension. See again, N.J.A.C. 4A:2-2.5(a)(1).

The Fire District has failed and refused to comply with its legal obligations aforecited. No preliminary notice of disciplinary action has been served upon the petitioner. No departmental hearing has been afforded the petitioner. No reasonable specificity of information premising petitioner's placement on three month suspension without pay has been provided. No reasonable opportunity was afforded petitioner to review the evidence premising the appointing authority's action. The Fire District has effectively precluded F/F MacFarland from contesting any component premising his placement on suspension without pay status.

---

[6]Since there is no evidence that suspension was premised upon pendency of a criminal complaint, the only basis premising the Fire District's action sub judice involves N.J.A.C. 4A:2-2.5(a)(1).

Civil Service Commission
Re: David J. MacFarland
April 3, 2009
Page 4

THERE ARE NO MATERIAL FACTS IN DISPUTE
REQUIRING REFERRAL OF THIS MATTER FOR
EVIDENTIARY HEARING, AND ACCORDINGLY,
RELIEF OUGHT BE AWARDED ON THE BASIS
OF THE PARTIES' SUBMISSION

Administrative appeals contesting employment action taken by an appointing authority often involve disputed material facts. Most administrative agencies, excluding the New Jersey Public Employment Relations Commission which conducts evidentiary hearings within its own agency, refer such case controversies to the New Jersey Office of Administrative Law (hereinafter "O.A.L.") for evidentiary hearings. The administrative law judge's recommended findings of fact and conclusions of law are then transmitted back to the referring agency for adoption or modification. There is no need to brief herenow the legal authority referencing such procedure since same is presumably well known to all parties.

There are no material facts in dispute sub judice. The procedural due process, defined and required by the Act as elaborated by regulations promulgated thereunder, have not been afforded F/F MacFarland by the Fire District. The only appropriate remedy is to require the appointing authority to comply with its legal obligations; and in connection therewith, the petitioner must be restored to status quo ante the Fire District's unlawful actions. Not to do so would, in practical effect, evidence the Commission's condonement of the Fire District's disregard of state law.

I respectfully disagree with your view of F/F Macfarland's Appeal Notice as requesting interim relief pursuant to N.J.A.C. 4A:2-1.2(c). The petitioner is not requesting interim, but rather final, relief. The petitioner is requesting that the Commission enforce the Act by requiring the appointing authority to afford F/F MacFarland his procedural due process rights.

The Fire District has attempted to re-direct the focus of F/F MacFarland's Appeal Notice by asserting that it had just cause to place petitioner on the three (3) month suspension without pay. Although petitioner contests such basis -- and the propriety of reasons premising such employment suspension involves substantive due process considerations -- the appeal at present focuses upon petitioner's argument of procedural due process deprivation. Once F/F MacFarland is restored to status quo ante his suspension, and the petitioner is afforded his departmental hearing rights incidental to issuance of preliminary notice of disciplinary action, then any further contestment of the substantive issues can be addressed through a new administrative appeal. That appeal becomes ripe only upon issuance by the Fire District of a final notice of disciplinary action imposing three (3) month suspension without pay.

Civil Service Commission
Re: David J. MacFarland
April 3, 2009
Page 5

ASSUMING, ARGUENDO, THAT THE COMMISSION VIEWS
PETITIONER'S APPEAL AS CONTESTING BOTH PROCEDURAL
AND SUBSTANTIVE DUE PROCESS COMPONENTS OF THE APPOINTING
AUTHORITY'S ACTION, THEN INTERIM RELIEF IS APPROPRIATE

The considerations to evaluate request for interim relief as addressed by N.J.A.C. 4A:2-1.2(c) mirrors the judicial standard outlined by the Supreme Court of New Jersey in Crowe v. DeGioia, 90 N.J. 126 (1986). Such principles "are not to be looked upon as hard and fast and sharply defined in scope; rather they are but factors, among others, which must be weighed, one with another, all going to the exercise of an exacting judicial discretion as to whether or not to issue a preliminary injunction." General Electric Co. v. Gemm Vacuum Stores, 36 N.J. Super 234, 237 (App. Div. 1955).

It is respectfully argued that there is a clear likelihood of success on the merits by the petitioner. As argued supra, the Fire District failed to comply with N.J.A.C. 4A:2-2.5(a)(1) in that no preliminary notice of disciplinary action had been served, no specificity of reasons premising Dr. Tannenbaum's analysis was provided, and no departmental hearing was afforded; and consequently, the petitioner has been denied all procedural due process.

Addressing next the absence of substantial injury to other parties, I anticipate the Fire District may argue prejudice should F/F MacFarland be awarded back wages for time served to date on suspension. Yet, it must not be forgotten that the mischief was caused by the Fire District's own actions (or, more appropriately stated, failure) premising this administrative appeal. Unless the Commission wishes to characterize its own regulations as unclear or ambiguous, the Fire District bluntly did not comply with same for no good and/or proper reason. Any "prejudice" which may be visited upon the Fire District incidental to remediation by the Commission is solely the consequence of the appointing authority's own decisions.

Nor can the Fire District argue prejudice to the public interest. The public interest has been defined by the Act at N.J.S.A. 11A:1-2; and the regulations further such policy. Indeed, the Fire District's failure to comply with the aforesaid administration regulations violates the public interest. Only by providing appropriate remediation can the Commission ensure that the public interest remain secure and unviolated.

Finally, it is imminently clear that petitioner is incurring immediate harm. He has been suspended without pay; and the harm is his lack of income. For those reasons briefed infra, the petitioner possesses a property interest which is being deprived on a daily basis.

Civil Service Commission
Re: David J. MacFarland
April 3, 2009
Page 6

## THE PETITIONER HAS A CAUSE OF ACTION AGAINST
## THE FIRE DISTRICT PREMISED UPON SECTION 1983

In Sixth Camden Court v. Evesham Twp., 420 F. Supp. 703 (D.N.J. 1975), the Court held that to establish a cause of action under Section 1983, a plaintiff must prove two elements: (a) that defendant acted under color of state law; and (b) that a constitutional right had been denied.

The Fourteenth Amendment to the Constitution of the United States provides, inter alia, that no state may "deprive any person of life, liberty or property, without due process of law." [7] It is fundamental law that a property or liberty interest as protected by the Fourteenth Amendment is created" (1) by virtue of the fact that the interest has been initially recognized and protected by state law or by some understanding with the state; or (2) by the fact that it is a fundamental right guaranteed by the United States Constitution. Paul v. Davies, 424 U.S. 693, 96 S. Ct. 1155, 47 L. ed. 2d 405 (1976).

The terms "property" as well as "liberty" are evasive of precise definition. As Justice Stewart observed in Board of Regents v. Roth, 408 U.S. 564, 572, 92 S. Ct. 2701, 2706, 33 L. ed. 2d 458 (1972):

> "Liberty" and "property" are broad and majestic terms. They are among the (g)reat (Constitutional) concepts . . . purposely left to gather meaning from experience . . . . They relate to the whole domain of social and economic facts, and the statesmen who founded this nation knew too well that only a stagnant society remains unchanged. National Ins. Co. v. Tidewater Transfer Co., 337 U.S. 582, 646, 69 Sup. Ct. 1173, 1195, 93 L.Ed. 1556 (Frankfurter, J. dissenting).

Instead of attempting to define in precise terms such concepts, Justice Stewart defined the attributes thereof:

> Certain attributes of "property" interest protected by procedural due process emerged from these decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it.

---

[7] Such right is similarly reflected in Article I, Paragraphs 1 and 19 of the Constitution (of 1947) for New Jersey.

Civil Service Commission
Re: David J. MacFarland
April 3, 2009
Page 7

He must, instead, have a legitimate claim of entitlement to it. It is a
purpose of the ancient institution of property to protect those claims
upon which people rely in their daily lives, reliance that must not be
arbitrarily undermined. It is a purpose of the constitutional right to a
hearing to provide an opportunity for a person to vindicate those
claims.

Property interests, of course, are not created by the Constitution.
Rather, they are created and their dimensions are defined by existing
rules or understandings that stem from an independent source such as
state law -- rules are understandings that secure certain benefits and
that support claims of entitlement to those benefits. (Ibid at 408 U.S.
578, 92 S. Ct. 2709.)

The State of New Jersey has, by adopting the Act and promulgating regulations thereunder, created a
property interest in continuing public employment for the petitioner, which can not be deprived
absent due process.

In addition to his "property" interest, F/F MacFarland also possesses a "liberty" interest. In
Williams v. Civil Service Commission, 124 N.J. Super 444 (App. Div. 1973), mod. 66 N.J. 152
(1974), the Court concluded that plaintiff was entitled to procedural due process, notwithstanding the
fact that no party interest was discernable, because there existed a valid liberty interest. As Justice
Mountain explained:

Thus removal from the public service -- has occurred to this plaintiff --
may indeed have imposed upon him a stigma or potential disability,
seriously affecting his liberty to seek future employment in a position
which falls within the domain of the civil service regulations.
Moreover, the publicity and the press attended upon his dismissal may
well have damaged his ability to obtain employment in the private
sector. For these reasons, we feel that the plaintiff is entitled to a post
termination evidentiary hearing to clear any damage to his reputation.
(Ibid at 66 N.J. 157.)

See also Chief Justice Hughes' discussion of the subject in Nicoletta v. No. Jersey District Water
Supply Commission, 77 N.J. 145, 155-162 (1978).

Having established the existence of a "property" and "liberty" interest, the analysis must
proceed as to what type of process is due. Even assuming, arguendo, that state regulations were

Civil Service Commission
Re: David J. MacFarland
April 3, 2009
Page 8

silent on the subject -- and, of course, they are not since the procedure prescribed, as briefed supra, were not followed by the respondent -- the judiciary has provided independent guidance.

At the minimum, procedural due process mandates that, in the absence of a contravailing state interest of overriding significance, notice be afforded to the affected party. Goss v. Lopez, 419 U.S. 565, 95 S. Ct. 729, 42 L. ed. 2d 725 (1975), and Fuentes v. Shevin, 407 U.S. 67, 92 S. Ct. 1983, 32 L. ed. 2d 556 (1972). The manner of notice to be given has been defined by Justice Jackson in Mullane v. Central Hanover Bank, 339 U.S. 306, 314, 70 S. Ct. 652, 657, 339 L. ed 2d 306 (1950), as that which is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Inherent within the concept of notice is the requirement that reasons for the contemplated deprivation of property must be given since, without same, the affected party is precluded from positing meaningful objection hereto. Raper v. Lucy, 448 F. 2d 748, 752-53 (1st Cir.), and Katris v. Waukegan, 498 F. Supp. 48, 53 (N.D. Ill. 1980).

It is well settled law that the fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191, 14 L. Ed 2d 62 (1965). Thus, it is clear that some form of hearing is required before an individual is finally deprived of a property interest. Wolff v. McDonnell, 418 U.S. 539, 557-58, 94 S. Ct. 2963, 2975-76, 41 L. Ed 2d 935 (1974).

The exact timing when such hearing is to be afforded depends, however, upon the circumstances of the case. If the deprivation will not cause a substantial hardship on the individual, because the government action can be easily reversed or because an emergency requires that the action be taken before a hearing can be held, then a hearing held after the government action will satisfy due process. See, Mathews v. Eldridge, 424 U.S. 319, 96 S. Ct. 893, 47 L. ed. 2d 18 (1976), and North American Cold Storage Co. v. Chicago, 211 U.S. 306, 29 S. Ct. 101, 53 L. Ed 195 (1908). The preferred procedure, however, is for the government to conduct a hearing prior to taking the action against an individual. Thus, in Goldberg v. Kelly, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed2d 287 (1970), the Court held that such prior hearing was necessary before welfare benefits could be terminated; in Morrissey v. Brewer, 409 U.S. 471, 92 S. Ct. 2593, 33 L. ed. 2d 484 (1972), before parole could be revoked; and in Goss v. Lopez, supra, before suspension from school is imposed.

Moreover, due process implies not merely an opportunity to be heard, but also an opportunity to be heard with reasonable promptness. Barry v. Barchi, 443 U.S. 55, 99 S. Ct. 2642, 61 L. ed. 2d 365 (1979).

It is respectfully argued that the Act, inclusive of state regulations promulgated thereunder, fall squarely within the contemplation of procedural due process as briefed supra. The denial of

Civil Service Commission
Re: David J. MacFarland
April 3, 2009
Page 9

procedural due process violates therefore both the state administrative regulations and the judicial constitutional expectations.[8]

CONCLUSION

As requested in his Appeal Notice, F/F MacFarland seeks "reinstatement to employment with full back pay and benefits together with such further compensatory and incidental damages as may be deemed appropriate, including award of attorney fees, as generally provided by N.J.A.C. 4A:2-2.10, 4A:2-2.11 and 4A:2-2.12." This would restore F/F MacFarland to status quo ante his suspension which should have been made in context with appropriate notice, departmental hearing, and timely manner.

Should the Commission act in such manner, then F/F MacFarland's appeal becomes moot. Should the Fire District reinstate the petitioner to status of suspension without pay after a departmental hearing is afforded, then a new appeal will be filed contesting the "just cause" basis for such action. That challenge is, as referenced by the legal briefing supplied, a component of "substantive due process".

Should the Commission decline to provide immediate remediation, then request is made to transfer this matter to the O.A.L. for evidentiary hearings on the appropriate basis for the Fire District's actions. F/F MacFarland would then reserve his right to pursue judicial action premised upon Section 1983 violation for procedural due process deprivation.

Respectfully submitted,

JOHN F. PILLES, JR.

JFP/krs
Enclosures
cc:   F/F David J. MacFarland
      01-0707

---

[8]Were the Commission inclined to tolerate the Fire District's failure to provide F/F MacFarland with due process as defined by its own regulations, asserting that petitioner has been provided sufficient "notice" in context with the Fire District's response sub judice, then judicial proceedings may have to be commenced premised upon Section 1983. No appointing authority should ever be permitted to avoid its due process responsibilities and then claim "no foul" since the substantive due process resolution can be addressed in context with appeal to the Commission. Due process must always be afforded in a meaningful manner within a reasonable time.

# GEORGE T. KOTCH

*Attorneys At Law*
### A PROFESSIONAL CORPORATION

George T. Kotch (NJ & D.C.)*
Lawrence T. Marinari (N.J.)
Richard D. Cordry (NJ, KS)
Robert R. Hanneman, Jr. (NJ)
Richard C. Belli, Jr. (NJ)

1844 Burlington-Mt. Holly Road
Route 541 North
Mount Holly, NJ 08060
Phone: (609) 267-9393
Fax: (609) 267-8071

*Certified by the Supreme Court of New Jersey
as a Workers' Compensation Law Attorney

Florence: (609) 499-9200
Trenton: (609) 394-3555
Cherry Hill (856)663-1233

Carol A. Cassenti
Paralegal

February 5, 2009

Fire District #2 Bordentown Township
262 Crosswicks Road
Bordentown, NJ 08505
Attn: Jack Archer, Chairman

RE: David MacFarland

Dear Mr. Archer:

Please be advised that this office represent Mr. MacFarland in pending worker's compensation claims. I have received a copy of recent correspondence indicating that Mr. MacFarland has been suspended without pay for 90 days based on an evaluation completed by Dr. Robert Tannebaum. It is my understanding that Mr. MacFarland is currently out of work and has been out of work directly related to a work accident of December 24, 2008. I have not received any information that would indicate that he has been released to return to work. In fact, I have been informed that there is recommendation by the authorized treating physician Dr. Abud that Mr. MacFarland undergo surgery to correct his debilitating back injury.

Mr. MacFarland has been receiving his full duty pay as part of the worker's compensation claim. It is expected that his full pay will continue based on the fact that he is still out of work directly related to the work injury of December 24, 2008. There should be no disruption of his benefits.

Under State law, Mr. Macfarland is entitled to these benefits until such time as the authorized treating physician returns him to light duty activity, ( if same in available) or until such time as he is released from care. Please be guided accordingly.

Very truly yours,

Robert R Hanneman Jr., Esq.

RRH
cc: David MacFarland

JOHN F. PILLES, JR., ESQ.
223 High Street, 2nd Floor
Mount Holly, New Jersey 08060
(609) 267-7711
Attorney for Plaintiff

RECEIVED
MAY - 5 2009

---

DAVID J. MacFARLAND,

                Plaintiff,

    v.

COMMISSIONERS OF FIRE DISTRICT NO. 2
IN THE TOWNSHIP OF BORDENTOWN,
BURLINGTON COUNTY, NEW JERSEY,  a body
corporate and politic; STEPHEN MONSON, an
elected fire commissioner; MATT DILLON, an
elected fire commissioner; JOSEPH FRESCO, an
elected fire commissioner; ANDREW WATSON,
an elected fire commissioner; and DAVID
HORSNALL, an elected fire commissioner,

                Defendants.

:    SUPERIOR COURT OF NEW JERSEY
     BURLINGTON COUNTY
:    LAW DIVISION

:    DOCKET NO.

:    CIVIL ACTION

:

:    ORDER TO SHOW CAUSE

:

:

:

---

THIS MATTER having been presented before the Court by John F. Pilles, Jr., Esq., counsel for

the plaintiff, David J. MacFarland, with appropriate notice having been afforded to the defendants; and

the Court having reviewed the verified complaint, factual certification and legal memorandum filed

herewith; and it being the opinion of the Court that the subject matter and redress sought in this

action warrants entry of the within order; and it further appearing that immediate, substantial and

irreparable loss and injury will probably occur before notice can be given and a hearing held thereon;

and no cause to the contrary appearing,

IT IS ON this _____ day of May, 2009, ORDERED and DIRECTED, that:

    1.    The defendants show cause before this Court at the Burlington County Court

Facility, 49 Rancocas Road in the Township of Mount Holly, Burlington County, New Jersey on _____

___, the _____ day of May, 2009 at _____ in the _____noon, or as soon thereafter as counsel may be heard, why an order should not be entered granting plaintiff such relief sought and specified within his complaint;

2.     Pending the return date of the within order to show cause, defendants are hereby ordered and directed to remove plaintiff from his current employment status as "suspended without pay" and instead place the plaintiff on medical leave with full pay subject to the condition and requirement that any temporary workmans compensation benefits the plaintiff may receive for same time period shall be remitted to the defendants, consistent with the Court's understanding as to current practice; .

3.     Defendants are to show cause before this Court at same time and place why an Order should not be entered

(a)     declaring that just cause, as required and established by state law, did not exist upon which to substantiate imposing any period of suspension without pay;

(b)     declaring that defendants failed and refused to provide plaintiff with procedural due process violative of both the Constitution of the United States and state law, whereupon plaintiff ought be restored to status quo ante his placement on suspension without pay status, with award of back wages less appropriate tax deductions and pension contributions, to redress such violation;

(c)     declaring that plaintiff had the right to remain on medical leave of absence, notwithstanding whether just cause existed under state law to suspend him from employment duties, whereupon he could recover and receive wages available through collective bargaining provisions and/or labor-management past practice;

(d)     awarding plaintiff reasonable attorney fees and legal costs as incurred

by him; and

(e)    scheduling an evidentiary hearing as to the appropriateness and amount of compensatory and punitive damages as sought by the complaint;

4.    A true copy of this order to show cause, together with true copy of verified complaint, factual certification and legal memorandum submitted in support thereof, be served upon the defendants within _____ days from the entry hereof, and that a proof of service attesting to such compliance be filed with this Court;

5.    The Court hereby authorizes Carl Letizia, P.I., a private investigator licensed pursuant to the laws for the State of New Jersey maintaining business operations at 209 Crest Road, Marlton, New Jersey (08053) to serve copy of this order, verified complaint, factual certification and legal memorandum, which has been filed with this Court, upon each fire commissioner named as party defendant in this matter personally or upon such member of the fire commissioner's household at said defendant's dwelling place or usual place of abode who is fourteen (14) years of age or older, which service of process shall be deemed proper and complete pursuant to the provisions of N.J. Court Rule 4:4-4(a)(1) as authorized by N.J. Court Rule 4:4-4(d)(3);

6.    Defendants shall file responsive pleading, together with any factual certification in opposition to the relief sought by plaintiff through this show cause order proceeding, within _____ days from the date hereof, and the failure or refusal of defendants to file responsive pleading within same time frame shall entitle plaintiff to request entry of default with consequential default judgment against all defendants;

7.    Defendants shall have leave to move for dissolution or modification of the equitable relief herein imposed on _____ days notice to this Court and plaintiff's attorney.



JOHN F. PILLES, JR., ESQ.
223 High Street, 2nd Floor
Mount Holly, New Jersey 08060
(609) 267-7711
Attorney for Plaintiff

---

| | |
|---|---|
| DAVID J. MacFARLAND, | SUPERIOR COURT OF NEW JERSEY |
| | BURLINGTON COUNTY |
| Plaintiff, | LAW DIVISION |
| v. | DOCKET NO. |
| COMMISSIONERS OF FIRE DISTRICT NO. 2 IN THE TOWNSHIP OF BORDENTOWN, BURLINGTON COUNTY, NEW JERSEY, a body corporate and politic; STEPHEN MONSON, an elected fire commissioner; MATT DILLON, an elected fire commissioner; JOSEPH FRESCO, an elected fire commissioner; ANDREW WATSON, an elected fire commissioner; and DAVID HORSNALL, an elected fire commissioner, | CIVIL ACTION |
| | CERTIFICATION IN SUPPORT OF REQUEST TO APPOINT PROCESS SERVER |
| Defendants. | |

---

John F. Pilles, Jr., Esq., an attorney at law in the State of New Jersey, hereby certifies the following facts, in lieu of affidavit, as provided by N.J. Court Rule 1:4-4(b):

      1.     I represent the plaintiff, David J. MacFarland (hereinafter "MacFarland"), in the above captioned matter.

      2.     This litigation -- which names both the Fire District as a body corporate and politic and the individual fire commissioners comprising its board as party defendants -- has been commenced premised, inter alia, upon the Civil Rights Act of 1871 (hereinafter "Section 198"), 42 U.S.C. §1983 alleging that said defendants' failure and/or refusal to comply with procedural and substantive due process requirements established by the New Jersey Civil Service Act (hereinafter "the Act"), N.J.S.A. 11A:1-1, et seq has violated the Fourteenth Amendment to the United States Constitution

(hereinafter "Federal Constitution") in that such action, taken under color of state law, has deprived the plaintiff of such property and liberty interests as created by the Act.

3.      Although I have mailed a true and complete copy of all documents filed with the Court to defendant's solicitor, Richard M. Braslow, Esq. (hereinafter "Braslow"), with copy addressed directly to the Board of Fire Commissioners at defendant Fire District's offices, such action does not, in my professional opinion, constitute appropriate "service of process" for the Court to assert personal jurisdiction over the defendants.

(a)      Since the individual fire commissioners have been named as party defendants, service must be effectuated in compliance with N.J. Court Rule 4:4-4(a)(1). Ordinarily, such process is served by a deputy officer of the Sheriff's Department for the county in which a defendant resides. To expedite such service -- since this matter is being presented to the Court via show cause hearing application to obtain reasonably prompt adjudication of the issues by the complaint -- delays ordinarily occasioned by sheriff's officers can be avoided if an individual is empowered with such authority by the Court.

(b)      It is also noted that the optional mail service, authorized by N.J. Court Rule 4:4-4(c) is insufficient in that defendants' failure to respond can not premise entry of default. Since the defendants have failed and/or refused to comply with my request for departmental hearing, notice specificity and discovery opportunity as presented in correspondence dated February 6, 2009 (annexed to the complaint as Attachment "B") I do not foresee defendants voluntarily consenting to in personam jurisdiction were service to be made by mail.

4.      I am requesting that the Court authorize personal service to be effectuated by Carl Letizia, P.I. (hereinafter "Letizia"). Letizia is licensed by the State of New Jersey as a private investigator; is a retired police officer formerly employed by the City of Philadelphia; and has been

used by me in several unrelated matters as a private investigator.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the forgoing statements made by me are wilfully false, I am subject to punishment.

Dated: 4/29/09

John R. Pilles, Jr., Esq.

JOHN F. PILLES, JR., ESQ.
223 High Street, 2nd Floor
Mount Holly, New Jersey 08060
(609) 267-7711
Attorney for Plaintiff

RECEIVED

MAY - 5, 2009

---

DAVID J. MacFARLAND,                           :        SUPERIOR COURT OF NEW JERSEY
                                                        BURLINGTON COUNTY
                      Plaintiff,               :        LAW DIVISION

           v.                                  :        DOCKET NO.

COMMISSIONERS OF FIRE DISTRICT NO. 2           :        CIVIL ACTION
IN THE TOWNSHIP OF BORDENTOWN,
BURLINGTON COUNTY, NEW JERSEY,  a body         :
corporate and politic; STEPHEN MONSON, an
elected fire commissioner; MATT DILLON, an     :
elected fire commissioner; JOSEPH FRESCO, an
elected fire commissioner; ANDREW WATSON,      :        PLAINTIFF'S CERTIFICATION
an elected fire commissioner; and DAVID                 SUBMITTED IN SUPPORT OF
HORSNALL, an elected fire commissioner,        :        REQUEST FOR ENTRY OF
                                                        SHOW CAUSE ORDER
                      Defendants.              :

---

David J. MacFarland, the plaintiff in the above captioned matter, hereby certifies the following

facts, in lieu of affidavit, as permitted by N.J. Court Rule 1:4-4(b):

    1.    I submit this certification to the Court in support of my application seeking entry of

show cause order with restraints.

    2.    I have read the allegations set forth in the complaint and reviewed the documents

annexed thereto as exhibits.  Such allegations and documents are incorporated herein by reference as

though fully set forth at length.

    3.    I suffered a work related injury circa December 24, 2008.  Since that time, I have

been on continuous medical leave of absence until January 29, 2009.[1]  Effective January 29, 2009, my absence from employment duties has been characterized as "suspension without pay" instead of "medical leave."

(a)    I have retained the professional services of Robert R. Hanneman, Jr., Esq. (hereinafter "Hanneman"), who is associated with the Law Offices of George T. Kotch, P.C., to represent me incidental to my workers compensation claim.  His correspondence addressed to the Commissioners of Fire District No. 2 in the Township of Bordentown, Burlington County, New Jersey (hereinafter "Fire District"), dated February 5, 2009 is annexed to the complaint as Attachment "I".

(b)    As indicated in Hanneman's aforesaid letter, prior to my being placed on "suspension without pay" status effective January 29, 2009, I had been receiving my full weekly wages. At all times relevant herein, the Fire District has a practice whereby career personnel, who have suffered a work related injury requiring medical leave, is paid for such absence with the understanding and expectation that any temporary benefits paid to the employee under the Workers Compensation Act would be remitted to the Fire District.  This practice has a dual consequence.  On one hand, the employee receives regular and full income during such medical leave; and on the other hand, the employee does not receive "double income" by retaining both employment wages and compensation benefits.  In connection herewith, the temporary benefits received under workers compensation is less than the amount received by ordinary weekly wages.

(c)    Since January 29, 2009, I have not received any weekly wages from the Fire

---

[1] I had been excused from work for four (4) days -- i.e., one shift -- by physician's certification following examination in the emergency room at Robert Wood Johnson Hospital in Hamilton Township, New Jersey on December 24, 2008. I attempted to return to active duty on December 29, 2009, but after working a few hours, was directed to return home. I have not returned to either regular or light duty since December 29, 2009.

District. My only source of income has been temporary benefits received under workers

compensation obtained by Hanneman on my behalf.

4.     My initial consultation with Robert L. Tannenbaum, Ph.D. (hereinafter "Tannenbaum")

occurred on January 4, 2006. I was ordered by the Fire District to meet with this psychologist, who is

associated with the Institute for Forensic Psychology maintaining offices in Bala Cynwyd, Pennsylvania,

for "the purpose of fitness for duty psychological examination".[2]

(a)     As Tannenbaum noted on the second page of same report:

FF MacFarland was referred for a fitness for duty evaluation
subsequent to concerns raised about his behavior and level of
emotional control following a recent fire incident as well as ongoing
friction with members of his department and what appears to be a
prior history of various difficulties on the job. FF MacFarland states that
he would "prefer to receive help to deal with the work related stress
through other means." FF MacFarland also maintains that he is able to
handle the demands of his work as defined in the job specification.

(b)     Tannenbaum also noted on the fourth page of his report that:

FF MacFarland was defensive about participating in the present
evaluation and asked me to reflect this posture in this report. He
seemed upset that he was "mandated" to attend the evaluation. He
describes his stress as "ongoing."   * * * He stated that he was afraid
to lose his job.

(c)     Tannenbaum concludes on the fifth page of same report:

Results of the interview and testing raise questions about the long term
prospect of successful adjustment by this firefighter to his work duties
and environment. Although verbally confrontational at times, he does
not appear to represent an imminent danger to himself or others.
(Emphasis supplied.)

(d)     Tannenbaum certifies within same report that "this officer is considered Fit for

_____

[2]Recited from the first page of Tannenbaum's report dated January 25, 2006 which is annexed hereto as
Attachment "A".

Duty provided that he initiate a course of psychological counseling shortly after returning to work, with a focus on stress management, work relationships, and control of alcohol consumption. (Emphasis in original.)

5. My January 4th (2006) consultation with Tannenbaum, promoting the aforesaid report dated January 25, 2006, was the second time I had met with this psychologist. As referenced in same report, I had initially been evaluated by Tannenbaum on December 2, 2004 incidental to new hire application. I have never been provided copy of any initial report; but Tannenbaum notes on the fifth page of his January 25th (2006) report:

> A review of this new hire psychological evaluation conducted on
> December 2, 2004, indicates that he was considered to be a "hire
> with risk and reservation" due to concerns about potential problems in
> the areas of mood management, impulsivity and alcohol misuse. It
> was recommended that "his performance should be monitored closely
> from the start."

6. The Fire District's current decision to place me on "suspension without pay" status has been premised upon Tannenbaum's report dated January 21, 2009.[3] In this report, Tannenbaum addresses, at the second and third pages, the reasons for referral and provided opinion that, after two evaluations finding me initially fit for duty, I am now viewed as unfit for duty warranting suspension from employment.

7. Both reports dated January 25, 2006 and January 21, 2009 were addressed to the Fire District. I was not copied with either report contemporaneous with forwarding same to the Fire District. The very first time I had opportunity to review such reports was in connection with the Fire District's response dated March 13, 2009 addressed to the New Jersey Department of Personnel

---

[3] A copy of this report is annexed hereto as Attachment "B". I was examined by Tannenbaum on January 14, 2009 as confirmed on the first page of same report.

(hereinafter "D.O.P.") which is annexed to the complaint as Attachment "G".

8.      I nether compensated Tannenbaum, in full or in part, for his professional services nor was I involved relative to the selection of this psychologist to perform any evaluation upon me.

9.      I have been advised by the attorney representing me in this judicial action, John F. Pilles, Jr, Esq. (hereinafter "Pilles"), that psychology is often viewed as an "inexact science." Pilles has also indicated to me that the D.O.P. regulations specifically provides opportunity to any individual, whose name is sought to be removed from an employment eligibility list by an appointing authority, "opportunity . . . to submit a report from a physician, psychologist or psychiatrist of his or her own choosing." N.J.A.C. 4A:4-6.5(b)(4). Pilles has also advised me that same administrative regulations provide a process by which such issue is resolved with specificity as to required contents of report. See, N.J.A.C. 4A:4-6.5(c), et seq.

10.     I am in the process now, having obtained Tannenbaum's reports which previously had not been supplied despite Pilles' request therefor made in correspondence dated February 6, 2009,[4] of consulting with a forensic psychologist of my own selection with request that he analyze and respond to Tannenbaum's professional opinion.

11.     What is most disturbing to me personally is that I do not know the frequency and content of any communications telephonically, electronically and/or written, exchanged between Tannenbaum and the Fire District. I do not know the nature and extent which the Fire District's reference to past disciplinary instances impacted Tannenbaum's assessment.

12.     With respect to past disciplinary incidents, I did not challenge same for the following reasons:

---

[4]A copy of Pilles' February 6th (2009) correspondence is annexed to the complaint as Attachment "B".

(a)     First, I did not wish to appear (or solidify any initial impression) that I was confrontational and/or litigious. While I did not agree with the factual basis premising such disciplinary action and/or the appropriateness of penalty imposed, I thought it more prudent to accept the discipline to avoid future problems.

(b)     Moreover, I did not have the financial basis to retain independent legal counsel. I would not incur such expenses, even now, but for the seriousness of consequences which may result incidental to my current situation. It is these consequences which have premised my decision to present show cause order before this Court. Same are more fully addressed in Paragraph No. 14 below.

(c)     Finally, I did not obtain the support of my collective bargaining representative, F.M.B.A. Local No. 112 (hereinafter "the Union"), due to (what I will now leave characterized as) personality conflict with the Union's leadership. Pilles has advised me not to pursue any cause of action against the Union for breach of duty of fair representation since my finances are limited and any victory would be Pyrrhic.

13.     Even assuming, arguendo, that my own forensic psychologist should confirm Tannenbaum's assessment and recommendations, I believe that I should not have been placed on "suspension with pay" status effective January 29, 2009. I present such factual conclusion premised upon the following advise provided to me by Pilles:

(a)     I understand that N.J.A.C. 4A:2-2.5(a)(1) authorizes immediate suspension "where it is determined that the employee is unfit for duty or is a hazard to any person if permitted to remain on the job, or that an immediate suspension is necessary to maintain safety, health, order or effective direction of public services." Although the aforecited regulation specifically references the term "unfit for duty," same is viewed -- at least by me -- analogous to the proverbial "postal

employee" whose continued presence on the job poses a proximate and immediate risk to coworkers, supervisors, or even the general public. I view such administrative standard as warranting immediate suspension to protect the interest of others potentially endangered were the "unfit employee" continued in job function. This ought not be applicable to me since, as of January 29, 2009, I was not on employment premises performing employment duties; rather, I was on medical leave of absence.

      (b)    Even assuming, arguendo, that I have the extent of emotional problems identified by Tannenbaum, I really ought be afforded medical leave under the federal Family Medical Leave Act whereby I could use earned and available benefits under my existing collective bargaining agreement. This would ensure my continued receipt of regular earnings such as sick, vacation, holiday and other time for which compensation would be paid.

      (c)    Without waiving the attorney client privilege, I was asked by Pilles prior to his acceptance of my case, as to the reasons known by me referenced by Tannenbaum as requiring continued therapy. I could not provide Pilles an effective answer. Pilles then inquired as to the issues premising counseling sessions with Cathy Lee Reimers, Ph.D. (hereinafter "Reimers"), with whom I began counseling services in compliance with the Fire District's directive. Quite frankly, the substance has been very general without specific issue orientation. To the best of my knowledge, Reimers has not been supplied Tannenbaum's report dated January 25, 2006; and Tannenbaum's report dated January 21, 2009 was received by her circa April 14, 2009. Reimers has also opined to me that our sessions should cease since she believes that I am no longer a viable candidate for continuing therapy.

14.    I have requested that Pilles present this show cause order with temporary restraints for the following reasons:

      (a)    I am currently married; my wife is thirty-four (34) weeks pregnant; and she

will soon be on medical/family leave from her employment due to her pregnancy. Consequently, my family's only source of income will be the temporary benefits received by me under workers compensation and disability benefits received by my wife incidental to her medical/family leave.

(b)      Neither my wife nor I have any savings accounts, corporate stock, investment portfolios or other assets which could be liquidated to meet living expenses.

(c)      I had, in the past, been living "from paycheck to paycheck," and since such income has become substantially reduced, my financial situation is destitute. I can not engage in secondary employment, to supplement my family's income, due to my current medical condition.

(d)      It is my understanding that in order for me to be vested with pension rights under the Police and Firemen Retirement System, I must have worked -- and thereby caused contributions to made during same time period -- a minimum of five (5) years. My pension has not yet vested; and I am reasonably apprehensive that my current placement on "suspension without pay" status will further delay such vesting. Were I unable, for whatever reason, to return to active employment from my workers compensation injury, or in the alternative, suffer a re-injury upon return to work either/both in the workplace and/or outside employment duties, I may not qualify for pension entitlement on the basis of the current three month "suspension" hiatus.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment.

Dated:

_____
David J. MacFarland

 **IFP** The Institute for Forensic Psychology

Irving Guller, Ph.D., A.B.P.P.
Director

Philadelphia Regional Office
One Presidential Boulevard
Suite 204
Bala Cynwyd, PA  19004
(610) 664-3442
(610) 664-3749 (Fax)
Tanenbaum@Verizon.net

Robert L. Tanenbaum, Ph.D.
Marcie Berman, Ph.D.
Regional Directors

## PRIVILEGED AND CONFIDENTIAL PSYCHOLOGICAL REPORT

### Fitness for Duty

NO PART OF THIS REPORT IS TO BE CONVEYED TO THE SUBJECT
OR TO ANY PERSON OTHER THAN THE REFERRING AUTHORITY
EXCEPT UNDER THE PROVISIONS OF APPLICABLE LAW IN
ACCORDANCE WITH THE GUIDELINES OF THE I.A.C.P. SECTION ON
PSYCHOLOGICAL SERVICES THIS REPORT IS TO BE CONSIDERED VALID FOR
ONE YEAR FROM THE DATE OF EXAMINATION.

To:    Lt. Frank Nucera
Bordentown Township Fire District #2
262 Crosswicks Rd.
Bordentown, NJ 08505

Re:    David MacFarland

Date of Report:        January 25, 2006

## INTRODUCTION AND IDENTIFICATION:

The above-named individual was referred by the Bordentown Township Fire District #2 for the purpose of fitness for duty psychological examination. The subject was tested and interviewed on January 4, 2006. The principle examiner was Robert L. Tanenbaum, Ph.D., a licensed psychologist in the Commonwealth of Pennsylvania (# 4112 L) and in the State of New Jersey (#4073). The subject was examined at the regional offices of the Institute for Forensic Psychology, Inc., which are located at One Presidential Blvd, Suite 204, Bala Cynwyd, Pennsylvania, 19004.

2

The general purpose of this fitness examination was to determine the current presence, if any, of emotional or intellectual characteristics, which would detrimentally affect the subject's performance in the role of a Fire fighter. Factors considered include intelligence, judgment, freedom from emotional disorder incompatible with effective performance in a public safety role, personality factors associated with ability to work within a team, accept directions and criticism persist in difficult or tedious tasks, and willingness to provide service. Also sampled are attitudes towards use of force, presence of bias, and other factors generally considered crucial to the role of a Fire Fighter. Also, where relevant, the ability of this individual to responsibly use a firearm in the line of duty is (re)assessed.

In addition to the tests named below, the subject was also given a personal interview covering social history, relationships, and issues of concern arising from the testing and analytical judgment. The interview is not specifically designed as a stress test, but is somewhat stressful.

SPECIFIC REASON FOR REFERRAL:

FF MacFarland was referred for a fitness for duty evaluation subsequent to concerns raised about his behavior and level of emotional control following a recent fire incident as well as ongoing friction with members of his department and what appears to be a prior history of various difficulties on the job. FF MacFarland states that he would "prefer to receive help to deal with the work related stress through other means." FF MacFarland also maintains that he is able to handle the demands of his work as defined in the job specifications.

3

## SOURCES OF INFORMATION:

Why Here?
Beck Depression Inventory
Beck Anxiety Inventory
Minnesota Multiphasic Personality Inventory – 2 (MMPI-2)
Human Figure Drawings
In Depth Interview
Background Information compiled by Dep. Lt. Frank Nucera
Memorandum from Township of Bordentown Emergency Management
        Coordinator re: Thanks for Assistance, dated July 10, 2005
Memorandum from Commissioner Kafer re: Inappropriate Behavior,
        Dated January 1, 2006
Newspaper Articles provided by FF D. MacFarland re: Motorcycle Accident and
        Home Fire
Newspaper Article provided by FF D. MacFarland re: Girl Killed by Car, dated
        December 31, 2005
COP-2-COP Intervention Hotline Information, provided by FF D. MacFarland
Telephone Consultation with Lt. MacFarland (on 1/13/06)
Telephone Consultation with FF Scully (on 1/12/06)
Telephone Consultation with FF MacFarland (on 1/20/06)

## EVALUATION FINDINGS:

The results of the MMPI-2 for this candidate are valid and reflect this individual's current concerns. Primarily, there are indication that he is struggling with low mood and high anxiety. He is very sensitive to the way that others respond to him and is prone to believe that he is being provoked or mistreated. In addition, there is some indication of a tendency toward social isolation and irritability. Some antisocial features are noted which may be long standing and also more pronounced in an effort to control and even manipulate his daily environment. Examples of specific test items which reflect his current mental state include: "I work under a great deal of tension", "I have periods of such great restlessness that I cannot sit long in a chair", "My sleep is fitful and disturbed", "At times my thoughts have raced ahead faster than I could speak them", "At times I feel like picking a fist fight with someone", "I get mad easily and then get over it soon."

On the Beck Depression Inventory, his score fell in the "depressed" range for an outpatient population. He acknowledged the following symptoms: "I feel more discouraged about my future than I used to be", "I am so restless or agitated that it is hard to stay still", "I have failed more than I should have", "I feel I am being punished", "I feel like crying, but I can't", "I am less interested in other people or things than before", "I sleep a lot less than usual", "I am much more irritable than usual", "It's hard to keep my mind on anything for very long."

4

On the Beck Anxiety Inventory, findings were indicative for potentially disruptive anxiety. On this measure, he acknowledged, "being unable to relax", "being nervous", "being scared", and "afraid of losing control."

On a projective figure drawing task, there were general indications of anxiety, and vulnerability. There were also suggestions that being helpful, brave, and diligent are important factors that motivate this individual's behavior.

Interview findings strongly suggest that FF D. MacFarland is struggling to comply with the expectations of a rank structure in the work setting. His job as a fire fighter represents the only aspect of his employment history which involved the need to work effectively with authority and standard operating procedure. Previously, he worked part-time on a farm where he lives. He continues to pursue this part time work. Another factor is the need for FF MacFarland to work with his brother, Lieutenant MacFarland who is his superior in the job setting. There is a reported history of sibling tensions which predates employment with the Township Fire Department.

In addition to problems with coworkers and authority figures, FF MacFarland has exhibited some loss of emotional composure at least twice when dealing with younger fire victims. However, he does not show insight into this issue despite repeated discussions in a supervisory setting. He is described by members of the department consulted (see above) as hard-headed, having tunnel vision, vocal and reactive, frustrated easily, slow to listen, a good guy but opinionated, burdened with family and personal problems (involving an old girlfriend), probably drinking alcohol too much, and not responding well to overtime. Overall, he was described as slow to adapt to the demands of his position as a firefighter, less so the technical skills and more so the challenges of the work environment.

During the interview, FF MacFarland acknowledged that his consumption of alcohol has increased "to a point where I could be drinking much of the time when I am not at work...I didn't realize this...I do not come to work intoxicated though." He stated that "I might have up to 5-6 beers per night when I am not on duty." There may have been at least one incident of disorderly conduct, possibly involving alcohol, which led to an arrest in the past (not while he was a firefighter). He did share that "I had an old restraining order against me, maybe ten years ago, with my ex-girlfriend, we are friends now." When in the military, the Coast Guard, he denied any disciplinary action and stated that he received an honorable discharge. He did acknowledge a verbal warning in July 2005 on his present job.

Initially, FF MacFarland was defensive about participating in the present evaluation and asked me to reflect this posture in this report. He seemed upset that he was "mandated" to attend the evaluation. He described his stress as "ongoing." After reflecting on the purpose of the evaluation, he decided to participate and was subsequently cooperative. He stated that he was afraid to lose his job. He emphasized that, "I would be willing to see my family doctor for a referral for stress management...take the time necessary to get back on my feet."

5

Subsequent to my initial evaluation of this individual, I had a follow-up consultation with him on January 20, 2006. At that time, he reported that, "I felt better after talking with you, it gave me a chance to step back, I have reduced my drinking...I was never addicted...I will call Dr. Bross, my family physician to get psychological referrals." On January 20, 2006, I received a fax document listing five psychologists who are potentially available to provide counseling to FF MacFarland. I understand that every effort will be made by FF MacFarland to select from this list of local mental health service providers.

INTEGRATED RESULTS OF TESTING PLUS INTERVIEW AND CONCLUSION: UNLESS OTHERWISE SPECIFIED, HISTORY GIVEN BELOW WAS OBTAINED FROM THE SUBJECT AND NOT INDEPENDENTLY VERIFIED BY IFP. SUBJECTS ARE INFORMED THAT LYING OR WITHHOLDING OF RELEVANT INFORMATION MAY RESULT IN A RECOMMENDATION TO REJECT. DISCREPANCIES BETWEEN HISTORY AS GIVEN BELOW AND BACKGROUND FINDINGS MAY IMPLY FALSIFICATION BY THE SUBJECT.

Re: David MacFarland

Results of the interview and testing raised questions about the long term prospects of successful adjustment by this firefighter to his work duties and environment. Although verbally confrontational at times, he does not appear to represent an imminent danger to himself or others. The safe use and storage of his personal firearms (which he reports using for purposes of hunting) was reviewed. As stated at the outset, there remains a question as to his ability to sustain successful work relationships in a rank structure setting. He prides himself on "doing excellent work" but he may be relatively insensitive to the impact of his behavior on others. A review of his new hire psychological evaluation conducted on December 2, 2004, indicates that he was considered to be a "hire with risk and reservation" due to concerns about potential problems in the areas of mood management, impulsivity and alcohol misuse. It was recommended that "his performance should be monitored closely from the start." Apparently, he has encountered difficulties on the job and still requires close monitoring.

6

## CONCLUSION

Based on the results of this evaluation, this officer is considered **Fit for Duty** provided that he initiate a course of psychological counseling shortly after returning to work, with a focus on stress management, work relationships, and control of alcohol consumption. With an appropriate consent to release information, I could potentially exchange information with FF MacFarland's treating psychologist for the purpose of furthering his adjustment at work and/or determining the presence and extent of those risk factors identified in the present evaluation. Accordingly, an updated psychological evaluation to track his progress in the coming months may be prudent and possibly necessary.

Sincerely,

Robert L. Tanenbaum, Ph.D.
C:\Documents and Settings\Robert Tanenbaum\My Documents\FILES\IFP\Fitness\Pennsauken Fire\MacFarland.doc

 The Institute for Forensic Psychology

Irving Guller, Ph.D., A.B.P.P.
Director

Philadelphia Regional Office
111 Presidential Boulevard
Suite 131
Bala Cynwyd, PA  19004
(610) 664-3442
(610) 664-3749 (Fax)
Tanenbaum@Verizon.net

Robert L. Tanenbaum, Ph.D.
Marcie Berman, Ph.D.
Regional Directors

## PRIVILEGED AND CONFIDENTIAL PSYCHOLOGICAL REPORT

### Fitness for Duty
### (Firefighter)

NO PART OF THIS REPORT IS TO BE CONVEYED TO THE SUBJECT
OR TO ANY PERSON OTHER THAN THE REFERRING AUTHORITY
EXCEPT UNDER THE PROVISIONS OF APPLICABLE LAW IN ACCORDANCE
WITH THE GUIDELINES OF THE I.A.C.P. SECTION ON PSYCHOLOGICAL
SERVICES THIS REPORT IS TO BE CONSIDERED VALID FOR ONE YEAR FROM
THE DATE OF EXAMINATION.

To:   Captain Joseph Herzberg
      Bordentown Township Fire District No. 2
      252 Crosswicks Road
      Bordentown, NJ 08505

Re:   FF David MacFarland

Date of Report:        January 21, 2009

## INTRODUCTION AND IDENTIFICATION:

The above-named individual was referred by the Bordentown Township Fire Department for the purpose of fitness for duty psychological examination. The subject was tested and interviewed on January 14, 2009. The principle examiner was Robert L. Tanenbaum, Ph.D., a licensed psychologist in the Commonwealth of Pennsylvania (# 4112 L) and in the State of New Jersey (#7300). The subject was examined at the regional offices of the Institute for Forensic Psychology, Inc., which are located at 111 Presidential Blvd, Suite 131, Bala Cynwyd, Pennsylvania, 19004.

Ra 15

The general purpose of this fitness examination was to determine the current presence, if any, of emotional or intellectual characteristics, which would detrimentally affect the subject's performance in the role as a police officer. Factors considered include intelligence, judgment, freedom from emotional disorder incompatible with effective performance in a public safety role, personality factors associated with ability to work within a team, accept directions and criticism, persist in difficult or tedious tasks, and willingness to provide service. Also sampled are attitudes towards use of force, presence of bias, and other factors generally considered crucial to the role of a firefighter.

In addition to the tests named below, the subject was also given a personal interview covering social and personal history, present problems, responses to stress, and any other relevant issues suggested by the history, recent background information, and/or test data.

SPECIFIC REASON FOR REFERRAL:

This individual was referred for a Fitness for Duty evaluation following a request by Captain Herzberg. According to background records provided by the Bordentown Fire Department, FF MacFarland has a questionable history of failing to follow proper procedures and orders. In January 2008, FF MacFarland was reprimanded for failing to wear his issued PPE and questioning a superior officer when ordered to do so. Furthermore, on January 27, 2008, FF MacFarland was alleged (in a letter from Lt. Herzberg) to have broken the following rules while on a fire call:

- Direct violation of the Burlington County Operations Procedure (failure to turn on and monitor his radio)
- Displaying insolence or indifference or evading duty during emergency incident
- Employees assigned to drive fire apparatus shall don turnout pants prior to responding to fire incidents
- Members shall promptly and willingly respond to lawful orders of superior officers, acting officers, or senior firefighters.
- All vehicles shall be operated in a safe and prudent manner, and all drivers shall comply with all traffic laws and applicable rules and regulations of the district
- Department members shall exhibit courtesy and respect to all officers and acting officers while on duty

In another correspondence from Capt. Herzberg (February 28, 2008) FF MacFarland was praised for his service as a firefighter and "the exceptional service these members demonstrated was in the highest tradition of the fire service and I would recommend that these members be recognized by the fire district for their effort and their actions..."

Most recently, a letter was issued by Lieutenant Ross Kownatksy on January 7, 2009 reflecting inappropriate conduct and decorum by FF MacFarland. He stated, "I personally feel that FF Dave MacFarland had a very unprofessional attitude, especially when speaking to representatives of other agencies."



It should be noted that this individual had completed a fitness for duty evaluation with our office on January 4, 2006 with a report issued on January 25, 2006. At that time, concerns had been raised by his employer about his behavior and level of emotional control following a then recent fire incident. In addition, there were concerns about ongoing friction between this individual and members of his department. Overall, there appeared to be concern about an ongoing history of various difficulties experienced on the job by this individual. At that time, FF MacFarland stated that he, "wanted to receive psychological help to deal with his work-related stress." He also maintained at that time that he was able to handle the demands of his work as defined in the job specifications.

Based on the results of the initial fitness for duty evaluation in 2006, it was recommended that FF MacFarland participate in psychological counseling, with a focus on stress management, work relationships and control of alcohol consumption. An updated psychological evaluation was also recommended to track his progress in counseling and on the job to further determine his continued suitability in his role as a firefighter.

At the time of the present re-evaluation, FF MacFarland shared that he did not participate in any psychological counseling as recommended in 2006. He said that, "it has been suggested that I did not properly go through follow-up treatment after my last fitness exam." This statement appears to be accurate. He could not articulate a reason for his lack of follow through. Accordingly, it appears that many of the problems that characterized his performance as a firefighter in 2006 continue to the present and may have worsened.

The purpose of the present evaluation is to determine whether FF MacFarland is fit to return to active duty as a firefighter.

SOURCES OF INFORMATION:

Minnesota Multiphasic Personality Inventory – 2 (MMPI-2)
Why Here?
Beck Depression Inventory – II
Beck Anxiety Inventory
Fundamental Interpersonal Relationship Orientation test (FIRO-B)
Human Figure Drawing
Background Information Provided by the Bordentown Township Fire Department
- Worker's Compensation Report for D. MacFarland (1/27/08)
- Employee Warning Report for D. MacFarland (1/27/08)
- Letter from J. Herzberg to J. Archer (1/28/08)
- Letter from J. Herzberg to J. Archer (2/28/08)
- Letter from R. Kownatsky to J. Colucci (1/7/09)
Previous Fitness for Duty Report, Prepared by R. Tanenbaum re: D. MacFarland
(1/25/06)
In Depth Interview



EVALUATION FINDINGS:

The results of the MMPI-2 for this candidate are considered valid and reflect this individual's current concerns.   There are indications of elevated anxiety, depression, difficulties with authority and physical complaints (sleep problems, aches and pains, general health worries).   He has also become suspicious regarding his current employment status and believes that, "someone has it in for me."   Also, he acknowledges having used alcohol excessively, but maintains that "I have cut down a little bit."   In addition, he shared that, "my wife is pregnant, I had physical contact when apprehending a subject/patient, I had to wrestle him to the ground, who had blood and vomit and was HIV positive...I am being tested."

Findings on the Beck Depression Inventory (II) indicate that FF MacFarland appears to be experiencing a moderate level of depression.   He acknowledged feelings of, pessimism, failure, punishment, self-dislike, agitation, loss of energy, changes in sleeping pattern (I sleep somewhat less than usual), irritability, concentration difficulty, and loss of interest in sex.

On the Beck Anxiety Inventory, FF MacFarland appears to be experiencing various symptoms associated with anxiety.   His test response included, "wobbliness in legs," "fear of the worst happening" (losing my job), "unsteady, scared, terrified and nervous feelings" and "fear of losing control."   He also reported numbness and tingling but qualified this concern by stating that "I have back pain."

On a measure of interpersonal style (FIRO-B), this individual characterizes himself as cautious but optimistic in general.

On a semi-projective measure of human figure drawing, he portrays himself as a person who "wants help to get better...I am worried about me, the baby and the future."

Interview findings indicate that according to background records FF MacFarland is a 37-year-old married male with one child and another due in the near future.   His appearance was appropriate for the evaluation.   He presented himself as somewhat confused about the purpose of the present re-evaluation.   His manner was very casual and at times he was not directly responsive to questions.   He has served the Bordentown Fire Department for four year.   Prior to that, he worked in construction for seven years.   He noted that he has been fired twice, once at age 23 and again at age 26, for problems with attendance and difficulties in his personal life; he did not provide specifics when asked.

He reported having served with the Coast Guard from 1989 to 1993.   He received an honorable discharge with the rank of E4 and a specialty as a Yeoman.   He reported one instance of disciplinary action in 1990 and said that he received "company punishment;" he said that he cannot remember the specifics.   He says that he received a G.E.D. in lieu of a high school diploma.   He briefly attended college at Burlington County Community College where he obtained approximately 30 credits towards a Fire Science degree.   He reports having been suspended while in high school.   He reports that



he has never been arrested. He has never been the subject of a restraining order. He reports no motor vehicle accidents. However, he does acknowledge a DUI and subsequent suspension of his license in 1994. He states that he currently has no points on his license. Concerning his family of origin, he is one of three children. Both of his parents are alive and currently living together. He notes that there is a history of alcoholism in his family. He described his marriage as "good" and that his wife is "expecting in June." As noted above, he seems very nervous about having another child. Currently, he notes that he has a pending disciplinary problem but was not specific when asked.

This individual believes that, "I know right from wrong." He is also concerned that, "many people I work for don't believe in me." He acknowledges that other people may find him to be "opinionated...but willing to help others." Initially he denied any alcohol abuse and stated that, "I am not drinking at the present time." When pressed for details, he acknowledged that he continued to drink but "less so" for a period of time following his 2006 fitness evaluation. He generally acknowledges that he is "stressed" at the present time in relation to his job and his family life. He added that his stress is "ongoing." As stated above, he did not follow through and arrange for recommended psychological counseling. Apparently, he has continued to encounter difficulties on the job. As noted in the initial fitness evaluation report, he was considered to be a "hire with risk and reservation" based on the results of his new recruit, psychological evaluation, and, even at that time concerns were raised about his ability to manage his mood, control his impulsivity and reduce his alcohol consumption. Overall, it has been recommended that "his job performance should be monitored closely."

## CONCLUSION

Based on the results of the present fitness re-evaluation, significant concerns remain about the continuation of this individual's career as a firefighter. There are still indications that he has difficulties controlling his mood and anxiety, alcohol use, ability to manage stress and his capacity to sustain successful work relationships in a rank structure job setting. Although he sees himself as wanting to do excellent work, he appears to be insensitive to the impact of his negative behavior on coworkers and possibly to members of the public. The fact that he did not obtain the recommended psychological counseling in 2006 is very troubling to this evaluator and to his employer, especially in light of the fact that he initially receive from counseling for his work-related problems.

Accordingly, FF MacFarland is considered **Unfit for Duty** at the present time, will be suspended from his duties, pending a minimum of three months of ongoing psychological/psychiatric treatment. He should obtain counseling from a qualified, doctoral level, certified psychologist or psychiatrist. Previously, he had identified several treatment providers through his health insurance company. These individuals may still be a resource. Treatment should be of at least 3 months duration on a once weekly basis and he should give written authorization for the treating professional to notify Dr. Tanenbaum on a monthly basis on his ongoing involvement in treatment and his progress or deterioration.



6

Furthermore, it should be this firefighter's responsibility to ensure that such treatment communications (notes) are regularly forwarded to the department and Dr. Tanenbaum.

Treatment should not be terminated until mutually agreed-upon by the subject and his therapist. Upon completion of treatment, the subject should have the therapist write a letter to the Bordentown Township Fire Department indicating that treatment has been completed, specifying the degree of improvement seen, and that FF MacFarland is or is not capable of continuing to fully carry out his job duties.

It is further recommended that after the indicated treatment period, FF MacFarland undergo an updated psychological fitness for duty re-evaluation to independently verify his reported progress in treatment.

Sincerely,

Robert L. Tanenbaum, Ph.D.

C:\Documents and Settings\Robert Tanenbaum\My Documents\FILES\FP\Fitness\Bordentown\Fire\MacFarland.doc

